THE CITY OF ROCKFORD *et al.*, Petitioners-Appellants, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

Second District   Nos. 2—86—0711, 2—87—0085 cons.

Opinion filed August 7, 1987.

Charles E. Box and Douglas P. Scott, both of City of Rockford, and Henry J. Close, of Connolly, Oliver, Close & Worden, both of Rockford, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart and Ann Plunkett-Sheldon, Assistant Attorneys General, of Chicago, of counsel), for appellee Illinois State Labor Relations Board.

Jacob Pomeranz and Richard J. Tuppen, both of Cornfield & Feldman, and Allen Garcia, of American Federation of State, County and Municipal Employees, both of Chicago, for other appellee.

JUSTICE HOPF delivered the opinion of the court:
Petitioners, city of Rockford (city) and Rockford Public Library (library), have petitioned this court for review against respondents,

the Illinois State Labor Relations Board (Board) and the American Federation of State, County, and Municipal Employees (AFSCME). Petitioners challenge that portion of the decision of the Board, filed on June 27, 1986, which, in determining the appropriate bargaining units for purposes of conducting a representation election under the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*), found that the city and the library are joint employers of library employees. In making their challenge, petitioners argue: (1) that the Board's decision is inconsistent with applicable definitions of "employer," and (2) that the Board's factors for linking the city and library are insufficient to find joint employer status.

On November 1, 1985, AFSCME filed a petition for representation-certification with the Board pursuant to section 9 of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1609), seeking an election to determine whether AFSCME should be certified as the exclusive collective-bargaining agent for the employees of the library. The petition named only the library as the employer of the employees sought to be represented.

A hearing was held on the petition before one of the Board's hearing examiners on January 30, 1986. At that hearing AFSCME was allowed to amend its petition, over objection of both the city and library, to name the city as "joint employer" with the library. The main issue raised at the hearing, and also in this court, was whether the city and the library are joint employers of the library employees.

On May 16, 1986, the hearing officer issued a recommended opinion, finding that the city and the library are joint employers and that "in light of the authority shared by the City [of] Rockford and the Rockford Public Library, *** meaningful negotiations over the essential terms and conditions of employment on behalf of the Library employees could not take place without the presence of both the City and the Library." Exceptions were taken by the city and the library to this ruling.

On June 27, 1986, the Illinois State Labor Relations Board issued its opinion and direction of election. The Board accepted, and adopted as its opinion, the recommendation of the hearing officer that the city and the library are joint employers of library employees. The Board directed that an election be held to determine either representation by AFSCME or "no representation."

The city and library appealed from the Board's determination that the city and the library are joint employers. That appeal was docketed in this court as case No. 2—86—0711. The Board, however, filed in this court a motion to dismiss the appeal on the grounds that

it sought judicial review of an administrative decision which was not final. We ordered the motion to be taken with the case.

■■ Subsequent to the docketing in this court of case No. 2—86—0711, an election was held pursuant to the June 27, 1986, order of the Board. AFSCME won the election and was certified as the exclusive bargaining representative of the library employees. The library, however, refused to bargain until the joint-employer question was resolved. AFSCME filed an unfair labor practice charge based on the library's refusal to bargain. Following a hearing on that charge, the Board determined that the library was guilty of an unfair labor practice by refusing to bargain.

As a result, the library timely filed a petition for administrative review which was docketed in this court as case No. 2—87—0085. The library then moved to consolidate case Nos. 2—86—0711 and 2—87—0085 because of the common question regarding the joint-employer issue, and this court granted that motion. Inasmuch as part of the consolidated petitions seeks administrative review of a *final* order issued by the Board pursuant to section 11(e) of the Illinois Public Labor Relations Act dealing with unfair labor practices (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)), the joint-employer issue is open to judicial review. Accordingly, we deny the Board's motion to dismiss the appeal on the grounds that it seeks judicial review of an administrative decision which is not final, and we address the joint-employer issue.

The library was created by municipal ordinance and is governed by a nine-member board of trustees, all of whom are appointed by the mayor of Rockford with the advice and consent of the city council. (Ill. Rev. Stat. 1985, ch. 81, pars. 2—1, 4—1.) The library is a public tax supported entity which depends upon a property tax levied by the city council pursuant to section 3—1 of the Illinois Local Library Act. (Ill. Rev. Stat. 1985, ch. 81, par. 3—1.) By this statute, the city has the authority to levy up to $0.15 per $100 assessed valuation for library purposes. When the library board asked the city council in 1983 to submit to the voters a referendum increasing the tax rate to $0.30 per $100 assessed valuation, the city council had to deny the request because it had already decided on the maximum three referendum issues. The library board made the same request in 1984, and this time the city council agreed to place the referendum, which subsequently passed, on the 1984 ballot.

The funds derived from the library levy are delivered to the city and deposited to the library's account. Because of the time lag between the collection of the property tax levied and the library's ability to spend the anticipated funds, the library participates in the

city's common cash account program which permits it to engage in short-term borrowing during the time lag. If the library borrows money, it must repay to the program the principal borrowed plus the prevailing market interest rate. Although the library may borrow from a bank, it has not done so.

The city and the library have the same fiscal year. The library director prepares the library budget after consulting with his staff to determine the library's budgetary needs for the coming year. The tentative budget is sent to the city's assistant budget director, who offers budgetary advice. The final budget is approved by the library board of trustees and then submitted to the city for final approval. The city council finance committee holds public hearings on the budget and possesses the authority to question library officers about expenditures. Although the city council has no authority to alter any item on the library budget, if the budget appears to exceed the statutory levy limitation, the city will refuse to adopt an appropriation ordinance until the budget conforms with that limitation.

Since the mid-1970s when the library experienced some financial difficulties in operating within its levy limitation, the city has provided free accounting and payroll services to the library. The library uses a voucher system for payment of bills. The library approves expenditures through vouchers which it sends to the city finance department. If the library has the money in its account to pay the bill, the city issues a city check. The voucher system is also utilized for the employee payroll. The library employees are paid from the library account on checks issued by the city bearing the signatures of the mayor and the comptroller.

Library and city employees are covered by the same health insurance program which was obtained by the city. City employees pay no premium, as the entire cost for city employees and their dependents is paid by the city. The library pays for the entire premium for library employees and for half of the premium for their dependents. Additionally, library and city employees are covered by the same pension plan, the Illinois Municipal Retirement Fund (IMRF). The IMRF sends periodic statements of pension benefits earned to library employees; these statements show the city of Rockford as the employer.

Prior to 1976, library employees were hired only by the library with no city involvement, but in 1976, the library became involved in the city's civil service program. The city decided to terminate that program in April 1979. However, the library permitted the city's personnel office to continue to advertise for and screen applicants for nonprofessional library positions. Such an applicant applies at the

city's personnel office, where an initial interview takes place. If the applicant successfully completes the interview, he or she is referred to the library for further interviewing, with final approval of the applicant resting with the director of the library. Applicants for professional library positions, such as librarians, apply directly to the library, where they are initially screened and interviewed by library personnel, with final approval coming from the library director.

The library board possesses the authority to set wages for library employees and to determine fringe benefits. It also has the power to make and adopt bylaws and rules and regulations for its own guidance and for governing the library. Additionally, the library board has exclusive authority to suspend, promote, lay off, discharge, evaluate, and discipline library employees.

Although the library board may take title to property and purchase land and buildings for library purposes, it possesses no authority to issue revenue bonds or to dispose of land. Moreover, the city must approve the library board's actions regarding the purchases, erection, repair, remodeling, or improvement of sites, buildings, and library equipment. In 1964 and 1969 the main library was remodeled. The 1969 remodeling was financed partly by a Federal grant and partly by a mortgage obtained by the library board after city approval to borrow the funds. In the late 1970s the city took over the mortgage and eventually paid the balance.

Petitioners, the city and the library, contend that they are not joint employers of library employees as determined by the Illinois State Labor Relations Board. Petitioners maintain that the Board's decision is inconsistent with applicable definitions of "employer" and that the Board's factors for linking the city and library are insufficient to find joint employer status.

■ The test for determining who is an "employer" has previously been set forth by the Board in *Du Page County Board*, 1 PERI par. 2003 (ISLRB 1985):

"'[W]ho is an employer' is a question of who has the authority to hire, promote, evaluate, discipline, discharge and set work rules for the employees in question, as well as the authority to obtain funding and to set fringe benefits."

In the case at bar, it was determined that the library possessed the authority to hire and discharge employees, to fix their compensation, to handle grievances, to adopt its own bylaws and rules and regulations, and to determine fringe benefits. Petitioners assert that these determinations by the Board satisfy the Board's own criteria for determining who is an employer and that, therefore, the Board

should have found the library to be the sole employer of the library employees. However, this assertion by the petitioners ignores the fact that the Board also found that the city shares authority with the library to tax and raise funds for library purposes. It was this sharing of authority in the library's funding which primarily led the hearing officer and the Board to conclude that meaningful negotiations regarding the employment terms and conditions of the library employees could not take place without the presence of both the city and the library and that, therefore, they were joint employers for purposes of collective bargaining.

This conclusion was not unlike that reached by the hearing officer and the board in *City of East St. Louis* 2 PERI par. 2006 (ISLRB 1986). In *East St. Louis* the city of East St. Louis and the East St. Louis Public Library were found to be joint employers under factual circumstances similar to those in the instant case. As in the present case, the East St. Louis library was created by a municipal ordinance, with its board of trustees being appointed by the mayor with the approval of the city council. Each year the East St. Louis city council levies a property tax for library purposes. Also, annually, the library submits its budget, following approval by its board of trustees, to the city council finance committee, which reviews the budget and submits it to the city council for approval. The East St. Louis city council may review and change the library budget, but it does not possess the authority to change specific item amounts.

The city of East St. Louis issues the payroll checks to the library employees, and these checks are signed by the city's treasurer and the city's comptroller. The library issues a check to the city to cover the library's payroll, but the East St. Louis library does not compensate the city for issuing the paychecks. Also, as in the instant case, both the employees of the city and the library are covered by the same pension plan, the Illinois Municipal Retirement Fund (IMRF), and the annual statements issued to each library employee by IMRF indicate the city of East St. Louis is the employer for the library employees.

A final similarity between the case at bar and the *East St. Louis* case is that the East St. Louis library board has no authority to issue revenue bonds or to dispose of land, although it may take title to property and purchase land and buildings for library purposes. Additionally, the East St. Louis city council must approve the library board's actions with respect to the purpose, erection, repair, remodeling, or improvement of sites, buildings, and library equipment.

■ It was these aforementioned similarities between the *East*

*St. Louis* case and the present case which led the Board in the instant case to conclude, after recognizing that the city of East St. Louis had more involvement with its library than did the city of Rockford, that "the primary reasons for finding that the city and the library are joint employers are the same in both cases." Based on the factual circumstances before us and the findings in *East St. Louis*, we believe the Board's conclusion that the city of Rockford and the Rockford Public Library are joint employers to be sound, especially in light of the fact that there is ample evidence here of the city's past and present role in the funding of the library. For example, in 1969 the library could not obtain a mortgage for remodeling the main branch without the city's approval, and the balance on that mortgage was eventually paid for by the city. Additionally, to alleviate the library's financial difficulties in the mid-1970s, the city offered the free use of its finance department for the processing of the library's bills and the employee payroll. Presently, as in the past, the city can defeat the library's efforts to obtain an increased levy of taxes by filling the maximum of three issues to be placed on a referendum. Also, as pointed out by AFSCME, the interdependence between the library and city regarding financial matters is evidenced in other areas, such as the collection of the library taxes by the city, the city's involvement in the library's budgetary process, the library's borrowing of money from the city rather than a bank, and the joint participation of the library and the city in the same pension program under which the city is recognized as the employer.

The key consideration in determining employer status is the extent to which an entity is necessary to create an effective bargaining relationship. (*County of Kane* 2 PERI par. 2012 (ISLRB 1986); *Du Page County Board* 1 PERI par. 2003 (ISLRB 1985).) As funding directly affects negotiations over wages and as the city has a direct effect on the library's funding, meaningful collective bargaining cannot take place in the instant case without the presence of the city. Moreover, we find it significant to the determination of the need for the city's presence that the library's board of trustees, which has the final approval of who is hired and discharged and total discretion over an employee's hours, wages, and working conditions, is appointed by, and also removed by, the mayor with the approval of the city council. As the library board possesses authority over the terms and conditions of employment and the city determines who is to be on that board, we are of the opinion that the city also possesses the authority, albeit indirectly, to affect those terms and conditions.

■ Finally, we consider petitioners' reliance in this rehearing

procedure on *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 507 N.E.2d 482, which we do not find supportive of petitioners' position that the city cannot be considered a joint employer of the library employees. In *County of Kane* the circuit clerk and the chief judge of Kane County each asserted that he was the employer of the deputy clerks in the circuit clerk's office. Our supreme court determined the circuit clerk, and not the chief judge, to be the employer of the deputies. Although the chief judge did have considerable powers over the circuit clerk's office, such as controlling the days and hours of its operation and pertinent functions to be performed by the deputy clerks, it was the circuit clerk who was authorized by statute to hire deputy clerks and to be responsible for their acts. (116 Ill. 2d 186, 200, 507 N.E.2d 482.) The court found that while the circuit clerk and his office were subject to the aforementioned powers of the circuit court, this general control did not make the chief judge an employer of the clerk's deputies. 116 Ill. 2d 186, 201, 507 N.E.2d 482.

It is these general powers of the circuit court in *County of Kane* which petitioners' claim illustrate that the city in the instant case cannot be an employer of the library employees. We fail to see the correlation between the two cases since in the instant case the board's finding that the city was a joint employer was based primarily on the city's participation in the funding of the library. In *County of Kane* no facts are presented to show that a similar financial relationship exists, and, thus, we find petitioners' reliance on that case to be misplaced.

For the reasons stated above, we affirm the decision of the Illinois State Labor Relations Board holding that the city of Rockford and the Rockford Public Library are joint employers.

Affirmed.

UNVERZAGT and INGLIS, JJ., concur.