THE CITY OF PEORIA, Petitioner-Appellant, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—87—0216

Opinion filed January 28, 1988.

Keith J. Braskich, of Keck, Mahin & Cate, of Peoria (Roy G. Davis, of counsel), for petitioner.

Thomas Sonneborn and Wayne M. Klocke, both of Sonneborn & Klocke, of Springfield, for respondent Peoria Firefighters Association.

Walter W. Winget and James F. Kane, both of Winget & Kane, of Peoria, for respondent Peoria Police Benevolent Association, Inc.

Neil F. Hartigan, Attorney General, of Springfield (William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

JUSTICE SCOTT delivered the opinion of the court:

These consolidated actions came before this court on direct administrative review from the Illinois State Labor Relations Board (Board). The Board found that the City of Peoria (City or Peoria) violated section 10(a)(4) of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 56½, par. 1610(a)(4)) by refusing to bargain with the Peoria Police Benevolent Association (Benevolent) and the Peoria Firefighters Association Local 544 (Local 544) over wages, hours and other terms and conditions of employment with regard to the City's police ranks below chief and the City's commissioned fire-fighting personnel in the ranks of assistant chief, battalion chief, captain, engineer and fire fighter. The Board found that the City had historically recognized the Benevolent and Local 544 as representing specified bargaining units within the meaning of sections 9(b) and 9(c) of the Act. (Ill. Rev. Stat. 1985, ch. 48, pars. 1609(b), (c).) Although both the Benevolent and Local 544 filed two charges, this appeal will speak only to charge S—CA—270 filed by the Benevolent and charge S—CA—264 filed by Local 544, as the other charges stand or fall based upon the outcome of the above-stated charges.

Local 544's charge S—CA—264, filed February 5, 1986, and the Benevolent's charge S—CA—270 filed February 21, 1986, were pursuant to section 11 of the Act and the rules and regulations of the Board (80 Ill. Adm. Code 1200 *et seq.* (1985)). Both charges were

based upon a claim of historical recognition and alleged that the City refused to collectively bargain with the respective organizations over the wages, hours and terms and conditions of employment of the employees in the affected ranks. The City has not denied that it refused to bargain, but denied the claim of historical representation. The City also asserts that if historical recognition is found to exist, managerial positions within the police and fire departments should not be included within the respective bargaining units. The City claims that its refusal to bargain with either organization was predicated upon managers being generally excluded from collective bargaining units by the Act. In other words, we believe the City's position to be that regardless of whether historical representation and recognition took place, the proposed units to be represented by the respective organizations are not appropriate units under the Act because they include managers.

Thus, on review we believe the issues to be as follows: (1) whether the Benevolent and Local 544 are labor organizations that have been historically recognized as the exclusive bargaining agents under sections 9(b) and 9(c) of the Act; (2) whether the proposed bargaining units represented by the respective organizations are the appropriate units under section 9(b) because they may include managers; (3) whether evidence regarding managerial status may be considered by the hearing officer pursuant to the filed unfair labor practice charged by the respective labor organizations; and (4) whether the City violated section 10(a)(4) of the Act by refusing to bargain with the Benevolent and Local 544 over wages, hours, and other terms and conditions of employment.

The Benevolent is an Illinois nonprofit corporation organized for the benefit and protection of its members, all of whom are police officers employed in the Peoria police department. The only rank excluded from membership in the Benevolent is the police superintendent. Currently all four captains, all 10 lieutenants, 29 of 30 sergeants and 138 of 141 patrol officers of the Peoria police department are members of the Benevolent.

The Benevolent is governed by an executive board consisting of elected officers and board members. Officers of all ranks maintaining membership with the Benevolent are eligible to vote in elections and run for office. The dues collected by the Benevolent have been deducted directly from the payroll checks of the members by the City's payroll department for at least the last 15 years.

The parties stipulated and the hearing officer found that the Benevolent is a labor organization within the meaning of section 3(i) of

the Act. Ill. Rev. Stat. 1985, ch. 48, par. 1603(i).

Local 544 was chartered in 1938 by members of the Peoria fire department as an affiliate of the International Association of Firefighters (IAFF). All ranks but fire chief are eligible for membership in Local 544. In fact, roughly 159 of 170 fire-fighting personnel are members of Local 544. The parties stipulated and the hearing officer found that Local 544 is a labor organization within the meaning of section 3(i) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1603(i)), and that the ranks of the Peoria fire department are, in descending order: chief, deputy chief, assistant chief, battalion chief, captain, engineer and fire fighter.

In consideration for dues paid by process of payroll deduction, Local 544 provides certain benefits to its members, including group insurance, representation of members in grievance proceedings and negotiation with the City regarding wages, hours and other terms and conditions of employment. Although Local 544's president has authority to appoint a negotiating team, a pattern of practice developed wherein the negotiating team consists of the union's chief officers, which may include members of any rank within the fire department.

The hearing officer found, based on the evidence presented, that representatives of Benevolent and Local 544 have been meeting annually with the City concerning wages, hours and other terms and conditions of employment since the mid-1960's. The hearing officer details these annual meetings in her findings of fact; we, however, will merely summarize the characteristics of those meetings throughout the years.

Each year, the City initiated the negotiating process by contacting the Benevolent and Local 544 and requesting from the unions their proposals for changes in wages and benefits. Upon receipt of the requests, the negotiating committees would seek input from all the members, prepare a written list of proposals and submit them to the City. Meetings between the City and the respective negotiating committees took place either jointly or individually wherein counterproposals by the City were stated and a process of give and take began between the parties toward reaching a final payroll package. The negotiations usually resulted in tentative agreements which sometimes pertained to all bargaining units and also contained items specific to one particular bargaining unit. Over the years, bargaining proposals encompassed a variety of subjects, including pay-scale and cost of living increases, insurance benefits, holidays, vacations and personal leave, sick leave and release time for collective bargaining meetings and attending union conferences. Other proposals regarding terms

and conditions of employment included seniority, longevity, layoffs, transfers, discipline, testing procedures, outside employment, uniforms, uniform allowances and residency requirements.

■ We note initially that the hearing officer's findings of fact are supported by the evidence. Our determination then is whether the hearing officer's decision, approved by the Board, is against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) Our duty is not to reweigh the evidence and substitute our judgment for that of the agency, but merely to reverse an agency decision only if an opposite conclusion is clearly evident from a review of the record. (*King v. City of Chicago* (1978), 60 Ill. App. 3d 504, 377 N.E.2d 102.) Moreover, the City admits in its brief that "[t]he facts in this case are largely undisputed," but that "the inferences and conclusions to be drawn from the facts" are the subject of the dispute.

■ ■ Regarding issue one, the parties have stipulated the Benevolent and Local 544 are labor organizations within the meaning of the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 1603(i).) Therefore, our focus is on whether the organizations have been historically recognized as the exclusive representatives for the proposed bargaining unit.

The City asserts that the Board should look at the quality of the historical bargaining relationship in light of post-Act requirements which define collective bargaining under section 7 of the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 1607.) We disagree.

Section 9(b) of the Act states:

> "In cases involving an historical pattern of recognition, and in cases where the employer has recognized the union as the sole and exclusive bargaining agent for a specified existing unit, the Board shall find the employees in the unit then represented by the union pursuant to the recognition to be the appropriate unit." (Ill. Rev. Stat. 1985, ch. 48, par. 1609(b).)

In *Village of Worth*, 2 Pub. Employee Rep. (Ill.) par. 2045, case No. S—RC—259 (Illinois State Labor Relations Board, September 24, 1986), the Board found that section 9(b) provides for two forms of historical recognition: formal and *de facto* recognition. Formal recognition will be found where the employer has expressly recognized a labor organization as the exclusive representative of a specified bargaining unit. (*Village of Worth*, 2 Pub. Employee Rep. (Ill.) par. 2045, at VIII—310. See also *City of Chicago*, 2 Pub. Employee Rep. (Ill.) par. 3004, case No. L—RC—8514 (Illinois Local Labor Relations Board, February 14, 1986).) We find no conclusive evidence of express recognition in this case. *De facto* recognition, however, occurs where

an employer has impliedly recognized a labor organization as the exclusive representative of a specified unit. (*Village of Worth*, 2 Pub. Employee Rep. (Ill.) par. 2045, at VIII—310.) The test for determining implied recognition is whether the employer has manifested an intent to establish a bargaining relationship. (*Northlake Fire Protection District*, 1 Pub. Employee Rep. (Ill.) par. 2026, case No. S—RC—107 (Illinois State Labor Relations Board, October 23, 1985).) Moreover, because implied recognition relies upon whether there has been historical representation of a unit by a labor organization, we believe section 9(c) of the Act describes those practices to be considered in determining whether the employer has manifested an intent to bargain collectively. (*Village of Worth*, 2 Pub. Employee Rep. (Ill.) par. 2045, at VIII—310.) Section 9(c) states:

> "Nothing in this Act shall interfere with or negate the current representation rights or patterns and practices of labor organizations which have historically represented public employees for the purpose of collective bargaining, including but not limited to the negotiations of wages, hours and working conditions, discussions of employees' grievances, resolution of jurisdictional disputes, or the establishment and maintenance of prevailing wage rates, unless a majority of employees so represented express a contrary desire pursuant to the procedures set forth in this Act." Ill. Rev. Stat. 1985, ch. 48, par. 1609(c).

Section 9(c) establishes the requirements for historical representation for the purposes of collective bargaining and "[n]othing in this Act shall interfere," including section 7 requirements, with those "rights or patterns and practices." (Ill. Rev. Stat. 1985, ch. 48, par. 1609(c).) We believe this interpretation to be correct and reasonable because to hold pre-Act bargaining relationships to the standards of section 7 would effectively bar a large number of organizations and bargaining units from protection under section 9 of the Act. We do not perceive the legislature as intending that result.

The evidence is clear that throughout the past 15 to 20 years the City has bargained collectively to an extent sufficient to comply with the standards of section 9(c) with both the Benevolent and Local 544. Although the City argues that neither group represents a defined bargaining unit, which it verifies by an impasse reached in the early 1980's over whether the City would officially recognize the firefighters' bargaining unit which purported to represent assistant chiefs, battalion chiefs and captains, the facts indicate that informal negotiations continued with Local 544 representing all ranks it had

previously represented. The same is true with the Benevolent. There was evidence produced that in the late 1970's the City expressed concern over supervisory personnel being included within the bargaining unit. No evidence, however, indicates that the City ever refused to meet with the Benevolent unless certain higher ranking police officers were excluded from the bargaining unit until the Benevolent filed the present unfair labor practice charge. Thus, we agree with the hearing officer's determination that the bargaining units were sufficiently specified, that the unions historically represented said bargaining units and that the City historically recognized the bargaining units pursuant to section 9 of the Act.

■ As to issue two, section 9(b) of the Act states that if there has been historical recognition of a sole and exclusive labor organization, "the Board shall find the employees in the unit then represented by the union pursuant to the recognition to be the appropriate unit." (Ill. Rev. Stat. 1985, ch. 48, par. 1609(b).) The City asserts, however, that the bargaining units represented contain managerial employees who should be excluded from even a historical bargaining unit. The City argues that an unfair labor practice charge defined in section 10(a)(4) applies only to a labor organization which seeks to represent public employees. Public employees or employees under section 3(n) of the Act include "any individual employed by a public employer *** excluding *** managerial employees *** and supervisors except as provided in this Act." (Ill. Rev. Stat. 1985, ch. 48, par. 1603(n).) The exceptions referred to above for supervisors appear in sections 3(s)(1) and (s)(2), and 9(b). Those provisions endow supervisors with employee status where they were part of a historically recognized unit. Managers, however, are nowhere excluded from nonemployee status. Therefore, asserts the City, the reference to "the employees in the unit" within sections 9(b) and 10(a)(4) of the Act excludes managerial employees from participating in a historical bargaining unit regardless of whether there was a pattern of historical recognition. We are not dismissing the City's assertions as unreasonable, but we adhere to the hearing officer's decision.

Once it has been established that there was historical recognition, section 9(b) deems that unit to be appropriate. As stated by the Board in *City of Calumet*, 2 Pub. Employee Rep. (Ill.) par. 2047, case No. S—RC—143 (Illinois State Labor Relations Board, September 24, 1986):

> "For the purpose of determining the existence of a pre-Act bargaining relationship within the meaning of section 9(b), the historical unit need only have been specified. This requirement

establishes no limitations on the scope and composition of the historical unit. *Northlake Fire Protection District*, 1 PERI (par) 2026 (Ill. SLRB 1985). If it meets this standard *** the historical unit may encompass an entire department." (*City of Calumet*, 2 Pub. Employee Rep. (Ill.) par. 2047, at VIII—324.)

"Until the unit is clarified to exclude any specific command officer, the Respondent herein is obligated to bargain with the Charging Party over the terms and conditions of employment for *all* of the command officers." *City of Danville*, 3 Pub. Employee Rep. (Ill.) par. 2002, case No. S—CA—824, at VIII—13 (Illinois State Labor Relations Board General Council, November 24, 1986).

We are not deciding that managerial employees may not be excluded from historical bargaining units, but are deciding that until such time as a proceeding is had regarding whether certain employees are managerial, the City has a duty to bargain with the entire unit as historically recognized.

■ Regarding issue three, the normal procedure for excluding managerial employees from a bargaining unit is a unit clarification or representation proceeding. The City cites *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166, 512 N.E.2d 100, for the proposition that an unfair labor practice charge is the exclusive vehicle for litigating and obtaining judicial review of an employee's claim that the bargaining unit is inappropriate. We do not disagree with that proposition, but also do not consider the case dispositive of the issue at hand. In *City of Rockford*, the decision of the Board of which the city and library sought review was twofold. First, the city and library sought review of a representation decision wherein the Board determined that the city and library were joint employers. Second, the city and library sought review of an unfair labor practice decision wherein the Board determined that, based upon its representation decision of joint employees, the city and library committed an unfair labor practice by refusing to bargain. (*City of Rockford*, 158 Ill. App. 3d at 168, 512 N.E.2d at 101.) The representation decision was filed in the appellate court prior to the Board's unfair labor practice decision, which was subsequently appealed and consolidated with the representation appeal. The Board filed a motion to dismiss on the ground that the Board's decision was not a final appealable order. The court held:

"Inasmuch as part of the consolidated petitions seeks administrative review of a *final* order issued by the Board pursuant to section 11(e) of the Illinois Public Labor Relations Act dealing

with unfair labor practices (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)), the joint-employer issue is open to judicial review. Accordingly, we deny the Board's motion to dismiss the appeal on the grounds that it seeks judicial review of an administrative decision which is not final, and we address the joint-employer issue." *City of Rockford,* 158 Ill. App. 3d at 169, 512 N.E.2d at 102.

We emphasize that in *City of Rockford,* the city and the library had gone through the appropriate procedural steps for obtaining relief at the administrative level. The city and library, not satisfied with the Board's representation decision, refused to bargain with the employees until the representation question was resolved. Thus, the city and library committed an unfair labor practice which was reviewable on appeal.

The notable difference between the present case and the *City of Rockford* is here the City is attempting to bypass a unit clarification or representation proceeding at the administrative level. Although it appears that an unfair labor practice decision by the Board is the only reviewable Board decision, we believe that the City must follow appropriate administrative procedures in determining representation questions. If the City is not satisfied with a unit clarification or representation decision, it should then commit an unfair labor practice which would subject the entire proceedings to judicial review. As the case stands, however, the City is attempting to commingle a unit clarification proceeding with the present unfair labor practice charge. We believe they should be separate proceedings, as the Board has established strict standards for finding an employee to be managerial within the meaning of section 3(j) of the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 1603(j).) The hearing officer properly refused to allow testimony regarding the managerial status of certain employees.

The City argues that the inclusion of managerial employees within a rank and file union undermines managers accountability and "robs the City of Management." We respond that we have not decided that managers may appropriately be within a historical bargaining unit, but that they are presumed to be appropriate unless and until such time as there has been a unit clarification proceeding to exclude such employees. Therefore, as the City has not properly posed the question of managerial employees being within the bargaining unit via unit clarification proceedings, its argument is premature.

■ Lastly, we find that the City has committed an unfair practice within the meaning of sections 10(a)(1) and (a)(4) of the Act. (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1), (a)(4).) In 1986, the City refused to

bargain with the Benevolent unless it excluded from representation police sergeants, lieutenants and captains, and also refused to bargain with Local 544 unless it excluded assistant chiefs, battalion chiefs and captains from representation. There appears to be very little, if any, dispute regarding this point. Thus, having found that the historical bargaining units are appropriate, that the Benevolent and Local 544 were exclusive representatives of the respective bargaining units, and that managers are presumed to be within a historical unit until properly excluded by proper proceedings, the unfair labor practice finding is correct.

For all of the foregoing reasons, the decision of the hearing officer, as confirmed by the Board, is affirmed.

Affirmed.

BARRY, P.J., and STOUDER, J., concur.