THE COUNTY OF WILL *et al.*, Petitioners-Appellants, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—91—0177

Opinion filed October 16, 1991.

Edward Burmila, Jr., State's Attorney, of Joliet (Philip A. Mock, Assistant State's Attorney, and David A. Hibben, of State's Attorneys Appellate Prosecutor's Office, of counsel), for petitioners.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

. Jacob Pomeranz, of Cornfield & Feldman, of Chicago, for other respondent.

JUSTICE GORMAN delivered the opinion of the court:

The County of Will seeks review of the Illinois State Labor Relations Board's (Labor Board's) finding that it is a joint employer with the Will County Executive for purposes of collective bargaining. The Will County Board (the County Board) was found to have committed an unfair labor practice by refusing to negotiate with the American Federation of State, County, and Municipal Employees, Council 31, AFL-CIO (AFSCME). The Labor Board found the County Board to be a joint employer, along with the Will County Executive (County Executive or Executive), of the employees in question. The County Board now appeals, claiming that the County Executive is the sole employer of the employees. We affirm.

The County of Will adopted a county executive form of government by referendum in 1988. The County Executive is elected at large by the voters and is responsible for all managerial and administrative functions within the county. This form of government is constitutionally based ("[a]ny county may elect a chief executive officer as provided by law. He shall have those duties and powers provided by law and those provided by county ordinance" (Ill. Const. 1970, art. VII, §4(a)), and statutorily controlled (Ill. Rev. Stat. 1989, ch. 34, par. 2—5001 *et seq.*)).

In August of 1989, the respondent, AFSCME, requested that the Will County Board and County Executive negotiate over a collective bargaining agreement that was due to expire in November of 1989. The County Executive agreed to negotiate. The County Board, however, refused to participate, claiming that as a result of the adoption of the county executive form of government, the County Board was no longer an employer of any members of the bargaining unit.

The County Executive and AFSCME met several times between October 1989 and June 1990. The County Executive stated that he was unable to agree to any economic proposals until the County Board determined the amount of funds that would be available for the contract. Negotiations went on for eight months. An agreement was finalized the same day that the County Board informed the County Executive of the amount of money budgeted for the contract.

AFSCME subsequently filed an unfair labor practice charge with the Labor Board, alleging that the Will County Board and the County Executive were joint employers of the Executive's employees. It was further alleged that the County Board's refusal to bargain with AFSCME concerning the wages, hours, and other terms and conditions of employment violated sections 10(a)(1) and (a)(4) of the Illinois Public Labor Relations Act. Ill. Rev. Stat. 1989, ch. 48, par. 1610(a)(1), (a)(4).

On December 5, 1990, Labor Board hearing officer Philip M. Kazanjian issued his recommended decision and order. He found that the County Board is responsible for approving the budget of the County Executive and that the County Board takes the position that it has the discretion to fund or not fund any agreement entered into by the County Executive and AFSCME. Kazanjian also found that the County Board has the authority to fix the hours of business for county offices, including the County Executive's office. Based on these findings, Kazanjian issued his recommended decision and order that the County Board is a joint employer and had committed an unfair labor practice by refusing to negotiate.

The County Board timely filed exceptions to the recommendation. Upon review, the Labor Board adopted the recommendation of the hearing officer. The County Board then petitioned this court for administrative review.

The issue on appeal is whether the Labor Board's finding that the Will County Board and the Will County Executive are joint employers is against the manifest weight of the evidence.

■ Courts may not interfere with the discretionary authority vested in an administrative agency unless that authority is exercised in an arbitrary and capricious manner or the administrative decision is contrary to the manifest weight of the evidence. A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in the light most favorable to the administrative agency, the court determines that no rational trier of fact could have agreed with the agency's decision. *American Federation of State, County, & Municipal Employees v. Illinois Educational Labor Relations Board* (1990), 197 Ill. App. 3d 521, 554 N.E.2d 476.

■■ The test for existence of joint employer status is "whether two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." *(Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 474, 537 N.E.2d 784.) Relevant factors include the putative joint employer's role in hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline and actual day-to-day supervision and direction of employees on the job. (*Orenic*, 127 Ill. 2d at 475, 537 N.E.2d at 794-95.) Additional factors include the authority to tax and raise funds and to approve budgets and grant financing. (*County of Kane v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 614, 518 N.E.2d 1339.) The key consideration in determining employer status is "the extent to which an entity is necessary to create an effective bargaining relationship." *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166, 173, 512 N.E.2d 100.

This is the second recent case in which the Will County Board has challenged a finding that it is a joint employer with another entity. In *County of Will v. Illinois State Labor Relations Board* (1991), 219 Ill. App. 3d 183, this court upheld a finding that Will County is a joint employer with the Will County Board of Health. This court noted several elements which supported that finding, many of which are applicable here as well. The Will County Board of Health is an administrative agency which was created by referendum. Approximately 40% of

its funding is derived from a tax levied by the County Board. The Board of Health must submit its budget to the County Board for approval. When viewing these factors *in toto*, it becomes clear that the County Board was necessary to create a stable and effective bargaining relationship.

Two other analogous cases support the Labor Board's finding in the instant case: *County of Kane v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 614, 518 N.E.2d 1339, and *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166, 512 N.E.2d 100.

*City of Rockford* involved the question of whether the city and the Rockford Public Library were joint employers of the library's employees. The Labor Board found that the primary link between the two was the city's shared power to tax and raise funds for library purposes. The court noted that "[a]s funding directly affects negotiations over wages and as the city has a direct effect on the library's funding, meaningful collective bargaining cannot take place in the instant case without the presence of the city." (158 Ill. App. 3d at 173, 512 N.E.2d at 104.) Accordingly, the city and the library were held to be joint employers.

*County of Kane* dealt with the joint employer question in the context of a county and the nonpeace personnel employed by the Sheriff's Department. That case is similar to the one at bar in that one employer (the sheriff) is an independently elected official while the other is the county board. The sheriff controlled the internal operations of his office subject to the County Board's appropriations power. The appellate court, relying on *City of Rockford*, found that the county is a necessary party to the creation of an effective bargaining relationship and is a joint employer with the sheriff.

■ Applying these cases to the case at bar, the Will County Board retains sufficient control to require it to be considered a joint employer. The County Board has exclusive control over funding. Furthermore, the record reveals that during negotiations between AFSCME and the County Executive, the County Board made known the parameters of any agreement that it would approve. For example, the County Board would not fund any contract containing fair-share language. Accordingly, no such provision was included in the final contract. This evidence establishes that there is a significant link between the County Board and the County Executive.

Will County, however, argues that a finding that the County Board and the County Executive are joint employers would improperly hinder the independence of these two branches of county govern-

ment, *i.e.*, legislative and executive. Will County bases this position on *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 537 N.E.2d 784. We believe that the reasoning of *Orenic* is inapplicable here.

The principal question in *Orenic* was whether given their statutory role in funding circuit courts, counties may be considered joint employers of those courts' nonjudicial employees for purposes of collective bargaining under the Illinois Public Labor Relations Act. (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*) The supreme court answered that question in the negative.

In *Orenic*, four chief judges of Illinois circuit courts sought a writ of prohibition that would prevent the Labor Board from certifying any bargaining unit in which a county had been listed as a joint employer of judicial branch employees. The court in *Orenic* was clearly concerned with a local entity asserting "control of the number, salary, or employment conditions of court personnel" (*Orenic*, 127 Ill. 2d at 477, 537 N.E.2d at 796), and thus interfering with the courts' administration of justice.

Such a concern does not exist here. It is true that the County Board and County Executive are two distinct entities. As such each has identifiable powers and duties. Many of the Executive's duties are delineated at section 2—5009 (Ill. Rev. Stat. 1989, ch. 34, par. 2—5009). Conversely, the interdependence of the two offices is exemplified by section 2—5009(q) (Ill. Rev. Stat. 1989, ch. 34, par. 2—5009(q)), which states that the Executive shall "perform such other duties as shall be required of him by the [county] board."

The County Board argues that despite this interdependence, the County Board's control over the purse strings is not sufficient to find that it is a joint employer. In support, Will County focuses on a passage from *Orenic* wherein the supreme court stated:

"Labor representatives at the bargaining table know that any agreement reached will be affected by the county boards' salary-setting and appropriations authority, but similar knowledge prevails when labor representatives bargain with agencies of the executive branch for agreements that will be affected by the General Assembly's budgetary authority. [Citation.] The General Assembly's budgetary authority with regard to the executive branch certainly surpasses that of the county boards with regard to the judicial branch. Just as the General Assembly's appropriations role fails to make that body the joint employer of executive-branch employees [citation], the counties' appropriations role fails all the more to make [the] counties the

joint employers of the circuit courts' nonjudicial employees."
*Orenic*, 127 Ill. 2d at 481, 537 N.E.2d at 798.

Requiring the County Board to sit at the negotiation table with the County Executive could hamper the Executive in fulfilling his duties of controlling all managerial and administrative functions within the county. However, some interdependence between branches of government is necessary for smooth functioning, particularly when only one of the parties controls funding.

*Orenic* is readily distinguishable. Here we are not dealing with a county infringing upon the judiciary's independence; instead, we are dealing with two offices both legally responsible for discharging the activity of local government from one funding source and using the same employees.

The finding of the Labor Board is not against the manifest weight of the evidence and its decision is therefore affirmed.

Affirmed.

BARRY and McCUSKEY, JJ., concur.