NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

               Docket No. 80322--Agenda 11--November 1996.

     THE VILLAGE OF WINFIELD, Appellant, v. THE ILLINOIS STATE LABOR

                   RELATIONS BOARD et al., Appellees.

                      Opinion filed March 20, 1997.

     JUSTICE BILANDIC delivered the opinion of the court:

     The Village of Winfield (the Village) appeals from a decision

of the appellate court confirming the decision and order of the

Illinois State Labor Relations Board (the Board) certifying the

Metropolitan Alliance of Police, Winfield Chapter No. 138 (the

union), as the duly elected collective-bargaining representative of

certain employees of the Village police department. The Village

contended that the Board did not have jurisdiction to consider the

union's representation petition, pursuant to section 20(b) of the

Illinois Public Labor Relations Act (the Act) (5 ILCS 315/20(b)

(West 1992)), because the Village employs fewer than 35 employees.

The appellate court held that the Village employed 35 or more

employees and was therefore subject to the jurisdiction of the

Board. Nos. 2--95--0042, 2--95--0335 cons. (unpublished order under

Supreme Court Rule 23). We accepted the Village's petition for

leave to appeal. 155 Ill. 2d R. 315. We now reverse the decision of

the appellate court.

                                   FACTS

     On December 6, 1993, the union filed a representation petition

with the Board seeking to serve as the exclusive collective-

bargaining agent for all full-time sworn patrol officers at or

below the rank of sergeant and all records clerks employed by the

Village of Winfield. The Village challenged the jurisdiction of the

Board, arguing that it was exempt from the Act because it did not

employ 35 or more employees, as required by section 20(b) of the

Act (5 ILCS 315/20(b) (West 1992)).

     The parties stipulated that, if the Village should be found to

employ 35 or more employees, the bargaining unit proposed in the

petition would be appropriate. A hearing was held before an

administrative law judge to determine whether the Village employed

35 employees. The Village conceded that it employed 22 individuals.

The union contended that the Village should also be found to be the

employer of nine employees of the Winfield Public Library and of

six "summer staffers" in the Village public works department. The

Village asserted that it was not the employer of the library

employees and that the summer staffers could not be counted for

section 20(b) purposes because they were "short-term employees," as

defined in section 3(q) of the Act (5 ILCS 315/3(q) (West 1992)).

     At the hearing, the Village presented the testimony of Village

Manager Bryon Vana. Vana is responsible for the day-to-day

administration of the Village. Vana testified that the Winfield

Public Library has its own board of trustees, which is elected by

the public. No library trustees are also Village trustees. No

library employees are also Village employees. Vana further

testified that the library prepares its own budget, which is

separate from the Village's budget. The library board provides a

copy of its budget to the Village. The library board also passes a

resolution requesting a specific tax levy, which is then forwarded

to the Village. The Village's tax levy ordinance includes a

separate levy request for the library budget. The library pays its

employees' salaries, which are an item in the library's budget. As

a courtesy, the Village processes payroll checks for the library's

employees. The Village provides no benefits to library employees.

The Village pays the bill for the library employees' health

insurance, but is reimbursed by the library for those payments. The

library has its own employment policies and the Village has no

involvement in the hiring, firing or discipline of library

employees. Vana also testified that the Village does not review or

approve library expenditures. The library pays its own bills.

     Exhibits were also presented in connection with the hearing.

The Village submitted answers to questions propounded by the

administrative law judge in which the Village stated that it has

the discretion to disapprove the library's appropriation request,

subject to court review. The Village also stated that it had never

disapproved the library's appropriation request and it had never

supplemented the library's budget with a Village appropriation.

     The administrative law judge issued a recommended decision and

order finding that the Village was a joint employer of the nine

library employees and that the summer staffers were not short-term

employees and could be counted for section 20(b) purposes.

Accordingly, the administrative law judge found that the Village

employed a total of 37 employees and was therefore subject to the

jurisdiction of the Board. The Board issued an order adopting the

recommendation of the administrative law judge and directing a

representation election. The Board subsequently entered an order

certifying the union as the duly elected collective-bargaining

representative of the proposed bargaining unit. The Village

appealed directly to the appellate court. 155 Ill. 2d R. 335. The

appellate court confirmed the decision of the Board.

                                 ANALYSIS

     The Illinois Public Labor Relations Act (5 ILCS 315/1 et seq.

(West 1992)) provides a comprehensive system of collective

bargaining for certain public employers and their employees.

Section 20(b) of the Act exempts certain employers from its scope.

Section 20(b) provides:

               "This Act shall not be applicable to units of local

          government employing less than 35 employees, except with

          respect to bargaining units in existence on the effective

          date of this Act and fire protection districts required

          by the Fire Protection District Act to appoint a Board of

          Fire Commissioners." 5 ILCS 315/20(b) (West 1992).

There is no dispute that the Village of Winfield is a unit of local

government. Accordingly, if the Village employs fewer than 35

employees, it is exempt from the Labor Relations Act, and the Board

has no jurisdiction to consider the Union's petition.

     As noted, the Village concedes that it employs 22 individuals.

The Village argues that it has no additional employees, and that it

is therefore exempt from the Labor Relations Act under section

20(b). The union and the Board (hereinafter referred to jointly as

appellees) contend that the Village is also the joint employer of

nine employees of the Winfield Public Library, and that the six

summer staffers in the Village's public works department should be

counted as Village employees. Thus, the appellees argue, the

Village employs 37 employees and is not exempt under section 20(b).

We note that both of the appellees' contentions must be accepted in

order for the Board to have jurisdiction in this case: if either

the library employees or the summer staffers are not employees of

the Village, the Village is exempt under section 20(b).

     This appeal comes to us on review of an order of an

administrative agency. Accordingly, reversal of the Board's

decision is warranted only if it is against the manifest weight of

the evidence. City of Freeport v. Illinois State Labor Relations

Board, 135 Ill. 2d 499, 507 (1990).

     We first address whether the Village was properly found to be

a joint employer of the employees of the Winfield Public Library.

     The test for the existence of joint employers is whether

" `two or more employers exert significant control over the same

employees--where from the evidence it can be shown that they share

or co-determine those matters governing essential terms and

conditions of employment.' " Orenic v. Illinois State Labor

Relations Board, 127 Ill. 2d 453, 474 (1989), quoting National

Labor Relations Board v. Browning-Ferris Industries of

Pennsylvania, Inc., 691 F.2d 1117, 1124 (3d Cir. 1982). Relevant

factors to consider in making this determination include the

"putative joint employer's role in `hiring and firing; promotions

and demotions; setting wages, work hours, and other terms and

conditions of employment; discipline; and actual day-to-day

supervision and direction of employees on the job.' " Orenic, 127

Ill. 2d at 475, quoting J. Jansonius, Use and Misuse of Employee

Leasing, 36 Lab. L.J. 35, 36 (1985). An important consideration in

determining whether a particular entity is an employer is the

extent to which that entity is necessary to create an effective

bargaining relationship. County of Will v. Illinois State Labor

Relations Board, 220 Ill. App. 3d 62 (1991).

     With these principles in mind, we examine the relationship

between the Village and the Winfield Public Library employees to

determine whether the Village is a joint employer of the library

employees. We conclude that the Village is not a joint employer of

the library employees. Rather, the library, through the library

board of trustees, possesses exclusive authority over the terms and

conditions of the library employees' employment.

     The Winfield Public Library was established pursuant to the

Illinois Local Library Act (75 ILCS 5/1--.01 et seq. (West 1992))

by the vote of the citizens of the Village. See 75 ILCS 5/2--2

(West 1992). Where the public votes to establish a library in a

village such as the Village of Winfield, the Local Library Act

provides that a seven-member board of library trustees (the library

board) shall be elected at the same time as the library

establishment election. 75 ILCS 5/4--3 (West 1992). The trustees'

terms are to be staggered, and their successors elected in

accordance with the general election law. 75 ILCS 5/4--3.1 (West

1992). Vacancies in the office of trustee are filled by the

remaining trustees until the next regular library election is held.

75 ILCS 5/4--4 (West 1992).

     The Local Library Act vests the library board with broad

powers to control and govern the library. See 75 ILCS 5/4--7, 4--

7.1 (West 1992). Among other things, the board is given the

following powers: (1) to make and adopt bylaws, rules and

regulations for the government of the library; (2) to have

exclusive control of the construction of any library buildings; (3)

to have exclusive control over the supervision, care and custody of

library grounds, rooms or buildings; (4) to purchase or lease real

or personal property; (5) to sell or otherwise dispose of any real

or personal property; (6) to enter into contracts and take title to

property acquired by it for library purposes; (7) to sue and be

sued; (8) to invest funds; and (9) to accumulate and set apart

unexpended funds as reserve funds. 75 ILCS 5/4--7 (West 1992). In

particular, with regard to library personnel, the library board is

granted the exclusive authority to appoint and fix the compensation

of a qualified librarian, who in turn shall have the authority to

hire such other employees as may be necessary, to fix their

compensation, and to remove such employees, subject to the approval

of the library board. 75 ILCS 5/4--7(7) (West 1992). The Local

Library Act also gives the library board the "exclusive control of

the expenditure of all moneys collected for the library." 75 ILCS

5/4--7(2) (West 1992).

     The testimony of Bryon Vana, the Village manager, further

demonstrates the autonomy enjoyed by the Winfield Public Library.

Vana testified that the library has its own board of trustees,

which is elected by the public. No library trustees are also

Village trustees, and no library employees are also Village

employees. The library pays all of its employees' salaries and

benefits. The Village provides no benefits to library employees.

The library has its own employment policies and the Village is not

involved in the hiring, firing or discipline of library employees.

Vana also testified that the Village does not review or approve

library expenditures.

     The provisions of the Local Library Act and the testimony of

Bryon Vana demonstrate that the Village has no involvement

whatsoever in the " `hiring and firing; promotions and demotions;

setting wages, work hours, and other terms and conditions of

employment; discipline; and actual day-to-day supervision and

direction of' " the library employees. Orenic, 127 Ill. 2d at 475,

quoting 36 Lab. L.J. at 36. Rather, the library board, which is

elected by the public and operates wholly independently of the

Village, has exclusive authority in each of these areas. Applying

our test for joint employer status, we conclude that the Village

may not be considered a joint employer of the library employees.

     The appellees nonetheless contend that the Village is a joint

employer of the library employees because of the Village's

"significant ability to affect library funding." We disagree. It is

true, as the appellees assert, that the library does not have the

power to levy taxes on its own behalf, but must rely on the Village

to levy a tax to fund the library's budget. The library board,

however, prepares the library's budget, and the Village's duty to

levy a tax to fund that budget is merely ministerial.

     Bryon Vana testified that the library board prepares its own

budget and passes a resolution for a specific tax levy, which is

forwarded to the Village for inclusion in the Village's

appropriation. This procedure is consistent with the Local Library

Act. The Act clearly contemplates that the library board will

determine its own budget. The Act specifically provides that the

library board shall have "exclusive control of the expenditure" of

library funds. 75 ILCS 5/3--5, 4--7(2) (West 1992). The Act also

directs the library board to prepare a statement of the library's

financial requirements for the upcoming year and the amount of

money which it will be necessary to levy for library purposes, "for

inclusion in the appropriation of the [Village]." 75 ILCS 5/4--10

(West 1992). The Act then directs the Village to levy a tax for the

library in the amounts determined by the library board. 75 ILCS

5/3--5 (West 1992). Vana's testimony and the Act's provisions

demonstrate that the library board alone determines the library's

budget. The library's budget encompasses those funds which will pay

for the library employees' wages and benefits. The library board

therefore has exclusive control over determining the amount of

funding required for its personnel needs.

     The fact that the Village must levy a tax to fund the

library's budget does not diminish the library board's control over

the library budget. The pertinent sections of the Local Library Act

provide that the Village's role in levying the tax to fund that

budget is simply a ministerial duty imposed by statute. Section 3--

4 of the Local Library Act provides, in pertinent part:

               "When the electors of [a] *** village *** have voted

          to establish and maintain a public library as provided in

          Section 2--2, the corporate authorities of such ***

          village *** shall levy an annual tax for the

          establishment and maintenance of such library, not

          exceeding .15% of the value as equalized or assessed by

          the Department of Revenue." (Emphasis added.) 75 ILCS

          5/3--4 (West 1992).

In addition, section 3--5 provides, in relevant part:

               "The library taxes provided for in this Act shall be

          levied by the corporate authorities in the amounts

          determined by the [library] board and collected in like

          manner with other general taxes of the *** village ***

          and the proceeds shall be deposited in a special fund,

          which shall be known as the library fund. *** [T]he

          proceeds of any such tax shall be paid over by the

          officer charged with the collection thereof to the board

          of trustees of the library. Expenditures from the library

          fund shall be under the direction of the board of library

          trustees." (Emphasis added.) 75 ILCS 5/3--5 (West 1992).

     This court has held that the use of the word "shall" in a

statute generally indicates a mandatory obligation. People v.

Thomas, 171 Ill. 2d 207, 222 (1996). Thus, under sections 3--4 and

3--5 of the Local Library Act, the Village is under a mandatory

duty to levy a tax for the establishment and maintenance of the

library in the amount determined by the library board. See Painter

v. Board of Trustees, 161 Ill. App. 3d 26, 32 (1987) (noting that

the Local Library Act clearly indicates that a village is under a

duty to pass the appropriation and tax levy exactly as requested by

the library board); cf. Chicago School Finance Authority v. City

Council, 104 Ill. 2d 437, 443-44 (1984) (under the School Finance

Authority Act, the Chicago city council is under a duty to pass a

tax levy ordinance as demanded by the Chicago School Finance

Authority). Pursuant to section 4--10 of the Local Library Act, the

library must send a copy of its budget and the necessary tax levy

to the Village. 75 ILCS 5/4--10 (West 1992). The Act, however, does

not grant the Village the power to reject the library's budget or

tax levy request. Thus, the Village's role in levying a tax to fund

the library's budget is simply a ministerial duty imposed by

statute. This ministerial task is not sufficient to render the

Village a joint employer of the library employees.

     Parenthetically, we note that the record contains a statement

by the Village that it possesses the discretion to disapprove the

library's appropriation request. The Village's statement is

accompanied by a citation to the appellate court's decision in

People ex rel. Effertz v. Brzezinski, 91 Ill. App. 2d 202 (1968).

Brzezinski interpreted the 1965 version of the Local Library Act

and held that, under that Act, the corporate authority, and not the

library board, had the final approval over the amount of taxes to

be levied for the library. The version of section 3--4 interpreted

in Brzezinski, however, stated that the corporate authorities "may"

levy an annual tax for the establishment and maintenance of the

library. See Brzezinski, 91 Ill. App. 2d at 203-04, citing Ill.

Rev. Stat. 1965, ch. 81, par. 3--4. In 1967, the legislature

amended section 3--4 to read, as it does presently, that the

corporate authorities "shall" levy an annual tax for the

establishment and maintenance of the library. Ill. Rev. Stat. 1967,

ch. 81, par. 3--4. Moreover, after the Brzezinski decision was

handed down in 1968, the legislature in 1969 amended section 3--5

to add the express language that the corporate authorities shall

levy a tax for the library "in the amounts determined by the

[library] board." (Emphasis added.) Ill. Rev. Stat. 1969, ch. 81,

pars. 3--4, 3--5. Thus, under the version of sections 3--4 and 3--5

applicable here, the Village's duty to levy a tax to fund the

library's budget is ministerial rather than discretionary.

     The Board concedes in its brief before this court that the

library budget does not need Village approval under the Local

Library Act. The appellees nonetheless assert that the Village has

the ability to affect the library's funding pursuant to two other

provisions of the Local Library Act. The appellees cite to a

portion of section 3--4 which states that, in addition to the

Village's mandatory duty to levy a tax for the establishment and

maintenance of the library, the Village:

               "may also levy an additional tax of .02% of the

          value of all the taxable property in the *** village ***

          for the purchase of sites and buildings, for the

          construction and equipment of buildings, for the rental

          of buildings required for library purposes, and for

          maintenance, repairs and alterations of library buildings

          and equipment." 75 ILCS 5/3--4 (West 1992).

The appellees also cite section 3--9, which states, in pertinent

part:

               "For the purpose of providing money to establish and

          replenish a local library working cash fund authorized by

          Section 4--13, corporate authorities shall have the power

          to levy, upon all the taxable property of a *** village

          *** a tax not to exceed .05% of the value, as equalized

          or assessed by the Department of Revenue for the year in

          which the levy is made." 75 ILCS 5/3--9 (West 1992).

The working cash fund referred to by this provision is defined in

section 4--13, which provides that a library board may create and

maintain a fund for the sole purpose of enabling the library board

to have in its funds, at all times, sufficient money to meet

demands for ordinary and necessary and committed expenditures. 75

ILCS 5/4--13 (West 1992).

     The appellees argue that the Village has discretion over

whether to levy the additional taxes provided for in these

sections. They assert that the Village therefore has control over

the amount of funding the library will receive. On this basis, the

appellees argue, the Village should be found to be a joint employer

of the library employees. The appellees' reliance on these

provisions is misplaced. The taxes provided for in these two

sections are expressly designated for the specific purposes

described therein, and do not provide the library with the funding

it requires to meet its general budgetary or personnel needs.

Accordingly, neither of these provisions are relevant to the

critical issue in this case, i.e., whether the Village possesses

sufficient control over the library's personnel that it may be

considered to be their joint employer.

     The appellees also rely on the appellate court's decision in

City of Rockford v. Illinois State Labor Relations Board, 158 Ill.

App. 3d 166 (1987). That case is clearly distinguishable. In City

of Rockford, the appellate court held that the City of Rockford was

a joint employer of employees of the Rockford library. Although the

library in that case was established under the Local Library Act,

different provisions of the Act applied because the library was

established in a city rather than a village, as here. In contrast

to a village library, a city library is governed by a nine-member

board of trustees, all of whom are appointed by the mayor with the

advice and consent of the city council. 75 ILCS 5/4--1 (West 1992).

The mayor also is granted the power to remove any trustee of a city

library. 75 ILCS 5/4--1.1 (West 1992). The court in City of

Rockford found these considerations to be significant in reaching

its holding that the city possessed sufficient control over the

library to be considered a joint employer of the library employees.

The court observed that the library's board of trustees, which had

the final approval over who was hired and discharged and total

discretion over an employee's hours, wages and working conditions,

was appointed by, and could be removed by, the mayor and the city

council. City of Rockford, 158 Ill. App. 3d at 173. Further, there

was evidence in that case that the city's personnel office

advertised for, screened and conducted the initial interview of

applicants for nonprofessional library positions. Also, the record

demonstrated that the city had, in the past, aided the library when

it was in financial straits, paying the balance on a mortgage

obtained by the library. City of Rockford, 158 Ill. App. 3d at 170-

71. We thus do not find the decision in City of Rockford to be

persuasive authority in this case.

     Accordingly, we hold that the Village is not a joint employer

of the employees of the Winfield Public Library. The Board's

finding to the contrary is against the manifest weight of the

evidence. The Village is therefore exempt from the Illinois Public

Labor Relations Act because it employs fewer than 35 employees and

the Board has no jurisdiction to consider the union's petition.

Given this holding, we need not consider the additional argument

raised by the Village, that the library is a "unit of local

government" such that its employees may not be aggregated with

those of the Village. We also do not reach the issue of whether the

six summer staffers should be counted as Village employees for

section 20(b) purposes.

                                CONCLUSION

     For the foregoing reasons, we reverse the decision of the

appellate court which confirmed the decision and order of the

Illinois State Labor Relations Board. Pursuant to section 20(b) of

the Illinois Public Labor Relations Act, the Board lacks

jurisdiction to consider the union's representation petition, and

the Board's order must therefore be set aside.

Appellate court judgment reversed;

                                                     Board order set aside.