(No. 66984.

MICHAEL A. ORENIC, Judge, *et al.*, Petitioners, v. THE ILLINOIS STATE LABOR RELATIONS BOARD, Respondent (The County of Cook *et al.*, Intervenors-Respondents).

*Opinion filed March 29, 1989.*

454

WARD and CALVO, JJ., took no part.

Lee J. Schwartz, Special Assistant Attorney General, and Julie O'Donnell Allen and Neil L. Brilliant, all of Sidley & Austin, of Chicago, for petitioners.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for respondent.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Deputy State's Attorney, and Iris E. Sholder, Assistant State's Attorney, of counsel), for intervenor-respondent County of Cook.

David R. Akemann, of Elgin, for intervenors-respondents Counties of Vermilion and Will.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for intervenor-respondent American Federation of State, County and Municipal Employees.

JUSTICE STAMOS delivered the opinion of the court:

This is an original action for a writ of prohibition or *mandamus*, brought by four chief judges of Illinois circuit courts (the four chief judges) against the Illinois State Labor Relations Board (the Board). Three Illinois counties and two labor organizations have intervened as respondents.

The principal question is whether, given their statutory role in funding the circuit courts, counties may be

considered joint employers of those courts' nonjudicial employees for purposes of collective bargaining under the Illinois Public Labor Relations Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1601 *et seq.*). As explained later in this opinion, we answer that question in the negative and issue a writ of prohibition accordingly.

## I. BACKGROUND

The present action arises out of four cases pending before the Board.

The first case, No. S—RC—88—71, involves the Honorable Michael A. Orenic, as chief judge of the 12th Judicial Circuit; the County of Will; and District 55, International Association of Machinists and Aerospace Workers, AFL-CIO (IAM). In that case, IAM petitioned the Board for an election so that, as the petition was amended, IAM might represent all assistant public defenders (except for confidential employees, supervisors, and others excluded by the Act) said to be employed jointly by the county, the chief judge, and the public defender in the office of the Will County public defender. The Board hearing officer's recommended opinion found that the county and the chief judge are the assistant public defenders' joint employers.

The second case, No. S—RC—88—74, involves the Honorable Ralph S. Pearman, as chief judge of the Fifth Judicial Circuit; the County of Vermilion; and the International Brotherhood of Electrical Workers, Local 399 (IBEW). In that case, IBEW petitioned the Board for an election so that it might represent (except for guards, supervisors, and others excluded by the Act) all regular full-time and part-time bailiffs said to be employed jointly by the county and the chief judge at the Vermilion County courthouse facility.

The third case, No. S—CA—88—137, involves the Honorable John W. Rapp, Jr., as chief judge of the 15th

Judicial Circuit; the County of Stephenson; and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW (UAW). In that case, UAW filed an unfair labor practice charge against Chief Judge Rapp for refusing to bargain, in a role as joint employer with Stephenson County, concerning clerk-stenographers and senior stenographers employed in the Stephenson County court services department. The case followed a determination by the Board that the county and the chief judge are joint employers of those employees. (*County of Stephenson,* 3 Pub. Employee Rep. (Ill.) par. 2066, No. S—RC—87—45 (ISLRB Oct. 28, 1987).) In *County of Stephenson,* Stephenson County had taken the position that it was not an employer of the stenographic employees.

The fourth case, No. S—RC—88—63, involves the Honorable Joseph M. McCarthy, as chief judge of the 16th Judicial Circuit; the County of De Kalb; and the American Federation of State, County and Municipal Employees, Council 31, AFL-CIO (AFSCME). In that case, AFSCME petitioned for an election so that it might represent, with certain exclusions and after certain stipulations had been made, all unrepresented non-professional employees of De Kalb County (as employer) and of certain elected county officials, the clerk of the circuit court in De Kalb County, and Chief Judge McCarthy (as respective joint employers). Chief Judge McCarthy's employees at issue are bailiffs and jury commission clerks. The Board hearing officer's recommended opinion found that the county is a joint employer with the circuit court's chief judge and the court's clerk in De Kalb County, respectively, as to the latter officials' employees.

On June 10, 1988, we allowed the four chief judges' motion for leave to file their petition for a writ of prohibition or *mandamus.* (Ill. Const. 1970, art. VI, §4(a); 107

Ill. 2d R. 381.) We also entered an order, effective until our final resolution of the issues raised in this action, (1) allowing the Board to continue its consideration of the representation cases and to conduct any elections that it saw fit under the Act, but (2) prohibiting the Board from certifying in those cases any bargaining unit that includes a county as joint employer of judicial-branch employees, (3) requiring the Board to stay any final decisions in those cases relating to the identity of the employers of judicial-branch employees, and (4) prohibiting the Board from processing the unfair labor practice charge in the Stephenson County case, and requiring the Board to stay that proceeding.

Intervening in this action are Cook, Vermilion, and Will Counties, AFSCME, and IAM, all as respondents. Ill. Rev. Stat. 1987, ch. 110, par. 2—408.

The four chief judges have advised the court in briefs that AFSCME, IAM, and IBEW lost the representation elections conducted during 1988 in the 16th, 12th, and 5th Judicial Circuits respectively and that therefore Chief Judges McCarthy, Orenic, and Pearman "have nothing immediately at stake in this litigation" but that they remain interested in its result, particularly since at the time of filing briefs Chief Judges Orenic and Pearman were each currently considered a joint employer with Will County and Vermilion County respectively as to certain judicial-branch employees. In addition, though the parties have not suggested it of record, the court takes judicial notice (see *Madden v. City of Chicago* (1918), 283 Ill. 165, 171) that Chief Judges Orenic and McCarthy have resigned their positions as chief judges.

## II. ISSUES

In their petition, the four chief judges contend that, for several reasons, the Board lacks jurisdiction over the counties said to be joint employers of court employees in

the four pending actions. The four chief judges contend that:

(1) the State is the sole employer of State judicial-branch employees;

(2) the counties' funding role in relation to the court system cannot make them employers of judicial-branch employees, because, according to the four chief judges, the statutes* requiring counties to fund the courts violate provisions of the Illinois Constitution creating a unified State court system (Ill. Const. 1970, art. VI, §1) and mandating State budgets and appropriations for State government expenses (Ill. Const. 1970, art. VIII, §§2(a), (b)); and

(3) if counties are deemed employers of judicial-branch employees, their role is merely ministerial and they lack authority to participate in collective bargaining between chief judges and labor organizations as to those employees.

Accordingly, the four chief judges pray (1) for a writ of prohibition that would prohibit the Board from certifying any bargaining unit in which a county has been listed as a joint employer of judicial-branch employees, or (2) for a

---

*The four chief judges have not enumerated the funding statutes at issue, and in reply to Cook County's criticism of their failure they say that in *County of Cook*, 4 Pub. Employee Rep. (Ill.) pars. 2025, 3011, Nos. S—RC—87—113, L—RC—87—26 (ISLRB & ILLRB Apr. 27, 1988), Cook County refused to stipulate as to an enumeration. The four chief judges agree to the substantial accuracy of Cook County's citation of what they term "some of the statutes providing for county funding of the judicial system." (Ill. Rev. Stat. 1987, ch. 25, pars. 20, 27.3; ch. 34, pars. 432, 1102, 5605 through 5607, 5609; ch. 37, pars. 806—1(2), 806—3 through 806—7, 806—10; ch. 38, pars. 113—3, 204—5, 204—6, 204—7(2)(a), (3), (11), 204—8(4); ch. 78, pars. 26, 29; ch. 108½, par. 9—101 *et seq.*; ch. 110½, par. 13—3.1.) However, any failure to identify precisely the potentially affected statutes need not detain us, since we do not actually reach the issue of their constitutionality.

writ of *mandamus* that would command the Board to take no such further action.

In their brief, the four chief judges expand on the foregoing contentions by arguing that the cited constitutional provisions "eliminat[e] the counties as co-employers" of State court employees (seemingly whether or not the funding statutes themselves are unconstitutional) and that, even if the funding statutes are constitutional and the counties' funding role is not wholly ministerial, the counties' collective-bargaining role as joint employers is "limited to negotiation over the strictly financial terms of employment." In particular, and somewhat elliptically, the four chief judges expand on or modify their jurisdictional contention by urging that the requested writ is justified because, since the Board itself believes it has no jurisdiction to decide constitutional issues that they raise, the Board should be prevented from issuing orders that are formulated without regard to constitutionality.

The four chief judges also suggest that our decision in *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, held that counties are not joint employers of State judicial-branch employees.

The four chief judges detail their reasons for asserting that counties, through assumption of a collective-bargaining role as to court employees and through refusals to yield on financial matters during bargaining, actually or potentially are sources of interference in the courts' critical decisions on funding and other administrative issues. The four chief judges say that, in order to fulfill their duty to engage in good-faith collective bargaining, judicial negotiators have had to accept counties' bargaining positions even when they disagreed with them and that the counties therefore have impeded judicial administration.

As an example of interference with judicial administration, the four chief judges cite statements made by

Du Page County in an *amicus curiae* brief filed in *County of Cook*, 4 Pub. Employee Rep. (Ill.) pars. 2025, 3011, Nos. S—RC—87—113, L—RC—87—26 (ISLRB & ILLRB Apr. 27, 1988), which supported collective-bargaining classification of Cook County as a joint employer of adult probation officers. In that brief, Du Page County described itself as employer of judicial-branch employees and asserted that the chief judge and the county board "both possess independent authority over separate, significant terms and conditions of employment" as to those employees because the county board "has control of the budgeting process" and of "the number of positions, salaries and fringe benefits of elected officials' [including the chief judge's] employees." Du Page County there argued that "if collective bargaining agreements are reached with respect to wages without the participation of the County, wage increases that were not planned for could negatively impact on the assessment of taxes and the use of revenues derived from taxes."

The four chief judges contend that, even if the statutes requiring counties to fund circuit courts are constitutional, counties should have no authority to participate or interfere in collective bargaining between chief judges and labor organizations and that counties should be subject to chief judges' determinations as to number, salary, hours, and working conditions of court employees. Otherwise, they say, the State's unified judicial system (see *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 542) will experience a "devastating impact" because of counties' local political considerations, the influence of employment terms applicable to the counties' own employees, and the counties' possible indifference to requirements for equal standards of judicial administration statewide.

The four chief judges cite *Painter v. Board of Trustees* (1987), 161 Ill. App. 3d 26, 29-30, for the proposition that "a local governmental entity can be called upon to enact the necessary taxes to fund another local government activity, even though it has no control over the amount to be included in that levy." They argue that, *a fortiori*, a local governmental entity such as a county can be so called upon with regard to a State government activity such as operation of the circuit court.

To the same effect, they also cite *Polich v. Chicago School Finance Authority* (1980), 79 Ill. 2d 188, and *Chicago School Finance Authority v. City Council* (1984), 104 Ill. 2d 437, dealing with city council duties to fund the Chicago schools, as well as decisions from other States upholding courts' authority to provide for funding according to their own needs even in the face of local authorities' opposition (*Commonwealth ex rel. Carroll v. Tate* (1971), 442 Pa. 45, 274 A.2d 193; *In re Court Reorganization Plan* (1978), 161 N.J. Super. 483, 391 A.2d 1255, *aff'd* (1979), 78 N.J. 498, 396 A.2d 1144; *Mowrer v. Rusk* (1980), 95 N.M. 48, 618 P.2d 886; *Zylstra v. Piva* (1975), 85 Wash. 2d 743, 539 P.2d 823). In support of their primary argument that the Illinois system of county funding for court operations is unconstitutional, the four chief judges also cite *County of Allegheny v. Commonwealth* (1987), 517 Pa. 65, 534 A.2d 760.

In response to the four chief judges' contentions, the Board asserts that it must determine questions of representation and unfair labor practices on the basis of specific and controlling Illinois law. The Board says that it has consistently held an employer to be each entity "whose presence is necessary to create an effective bargaining relationship." (See *County of Tazewell*, 1 Pub. Employee Rep. (Ill.) par. 2022, No. S—RC—2 (ISLRB Sept. 27, 1985); *Du Page County Board*, 1 Pub. Employee Rep. (Ill.) par. 2003, Nos. S—RC—9, S—RC—17

(ISLRB Apr. 26, 1985).) In *Du Page County Board*, the Illinois State Labor Relations Board observed:

> " '[W]ho is the employer' is a question of who has the authority to hire, promote, evaluate, discipline, discharge and set work rules for the employees in question, *as well as the authority to obtain funding and to set fringe benefits*. [Citation.]" (Emphasis added.) (*Du Page County Board*, 1 Pub. Employee Rep. (Ill.) par. 2003, at VIII—13.)

Accord *County of Kane v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 614, 621-23; *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166, 171-73.

Because it considers itself unauthorized to act beyond the scope of powers granted it by the General Assembly (see *Schalz v. McHenry County Sheriff's Department Merit Comm'n* (1986), 113 Ill. 2d 198, 202; *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 129-30; *Town of Decatur*, 2 Pub. Employee Rep. (Ill.) par. 2024, No. S—RC—144, at VIII—178 (ISLRB May 29, 1986)), the Board has stated in a previous case that its prerogative is not "to declare the invalidity of Illinois statutes" and that it "must take the governmental structure as [it finds] it," adding:

> "Our function in a case like this is to identify the parties necessary for an effective bargaining relationship, given the facts as they exist and as they are decreed in unambiguous laws. [We] cannot ignore the statutes and established facts that give the County control over important aspects of [employment of probation officers], merely because that control may be inconsistent with the intent underlying the Constitution. If the structure of government must be reordered to reflect the constitutional design, it is for other authorities to effect the change. Until then, we must recognize the situation that presently exists." (*County of Cook*, 4 Pub. Employee Rep. (Ill.) pars.

2025, 3011, Nos. S—RC—87—113, L—RC—87—26, at X—149, XI—68 (ISLRB & ILLRB Apr. 27, 1988).)

The Board's brief in the present cause adheres to the quoted views.

The Board also advises us in its brief that, should we affirm the constitutionality of the statutes providing for county funding of the court system, in determining joint-employer status the Board expects that it would continue as in the past to examine "the legal and factual role played by a given county with respect to the funding of particular judicial employees." In this connection, the Board says that merely characterizing the counties' funding role as ministerial (for which the four chief judges alternatively argue), without analyzing each statute providing for a county funding role, "would do little to assist in the determination of any county's status as a joint employer under a specific statutory provision," since that determination must depend on statutory funding duties and the parties' actual conduct in a given case.

Thus, the inference we draw from the Board's brief is that, unless we expressly hold the funding statutes to be unconstitutional or expressly forbid the Board to consider counties as joint employers of court employees, in a given case the Board might apply labor law principles to find joint-employer status, even in the face of a declaration by us that the counties are not the constitutional employers of such employees or that the funding statutes *per se* are insufficient to make the counties' funding role more than "ministerial." In any event, the Board's brief does specifically request that, if we hold the funding statutes to be constitutional, we decline to label the counties' funding role "ministerial."

For its part, Cook County as intervenor contends that county funding of the judicial system is constitutional; that the funding system confers on counties a

joint-employer status that is consistent with a unified judicial system; that our opinion in *County of Kane v. Carlson* did not decide whether a county may be a joint employer of court employees; that counties cannot be required to pay "ministerially" for employment terms negotiated by chief judges; and that Chief Judges Orenic and McCarthy should be dismissed as petitioners for lack of interest in the subject matter. In addition, Cook County contends that prohibition or *mandamus* does not lie in this cause and that the four chief judges rely on nonexistent or unpersuasive evidence of county interference in judicial administration.

Vermilion and Will Counties contend that our decision in *Drury v. County of McLean* (1982), 89 Ill. 2d 417, rejected the view that, by paying salaries of nonjudicial employees of the courts, counties subjected such employees to their control. Vermilion and Will Counties also contend that our decision in *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, means that county authority to pay nonjudicial employees of the courts does not contravene the separation of powers. Vermilion and Will Counties contend further that the counties' statutory mandate to pay the salaries of courts' nonjudicial employees is authorized by constitutional provisions (Ill. Const. 1970, art. VI, §§14, 18; art. VII, §§10(a), (c); art. VIII, §2) dealing with counties' payment of additional salaries to judges, court clerks, and other nonjudicial court personnel; intergovernmental cooperation; and State finance. In an argument similar to one advanced by Cook County, Vermilion and Will Counties contend that counties' role in funding nonjudicial court employees cannot be regarded as simply ministerial, because recognizing courts' "dictatorial" authority to determine such employees' compensation would be tantamount to giving courts rather than county boards the power to tax county residents.

AFSCME's brief argues merely that we should decide, as an additional issue, whether the Administrative Office of the Illinois Courts (the AOIC) ought to be considered a joint employer with chief judges or counties as to probation officers. AFSCME's concern arises out of the subject matter of *County of Cook*, 4 Pub. Employee Rep. (Ill.) pars. 2025, 3011, Nos. S—RC—87—113, L—RC—87—26 (ISLRB & ILLRB Apr. 27, 1988). On September 29, 1988, we denied a motion by the four chief judges to strike AFSCME's brief. However, on that same date we denied AFSCME's motion to dismiss the four chief judges' petition or, in the alternative, to direct them to bring the AOIC before this court.

Because we hold that counties ought not to be considered joint employers of nonjudicial employees of courts, AFSCME's contention becomes moot as it applies to county-AOIC joint-employer status. As it applies to any status of chief judges and the AOIC as joint employers of probation officers, we agree with Cook County and the four chief judges that, despite having received leave to intervene, AFSCME has not moved this court for leave to file its own petition in this cause. (107 Ill. 2d R. 381(a).) AFSCME has briefed an issue as to which it has filed no claim for relief; the AOIC is not a party to this cause; and we do not believe that we must consider AFSCME's concern in order to achieve a complete resolution of the issues before us.

No brief has been filed by IAM. The four chief judges advise us in their reply brief that IAM's stated reason for filing no brief was IAM's loss of its representation election in Will County. The four chief judges advise us also that Stephenson County, IBEW, and UAW chose not to intervene or file a brief but have been provided with copies of all documents filed by the four chief judges in this cause.

## III. ANALYSIS

This court has strongly recommended that the General Assembly develop a system of full State funding for the court system that would not rely on the counties' present statutory role. (Annual Report of the Supreme Court to the General Assembly, Jan. 27, 1989, at 1.) However, a policy recommendation against the present county-based system is not equivalent to a judgment on its constitutionality.

In the cause now before us, we need not reach the question whether the present funding statutes are constitutional, because we conclude that the Board cannot constitutionally apply a test of joint-employer status so as to result in classifying counties as joint employers with chief judges in regard to court employees. Our conclusion relies on the need to harmonize traditional labor law principles, derived from experience in the private employment sector, with the scheme of the Illinois Constitution's unified court system and separation of powers and with the nature of public-sector employment. We conclude further that a writ of prohibition should issue in this cause.

### A. Subsidiary Issues

As preliminary matters, we address Cook County's contentions that prohibition or *mandamus* does not lie, that *County of Kane v. Carlson* did not decide the issues of this cause, and that Chief Judges Orenic and McCarthy should be dismissed as petitioners.

#### 1. Availability of *Mandamus* or Prohibition

*Mandamus* and prohibition are both extraordinary writs. (See generally Allen, *Mandamus, Quo Warranto, Prohibition, and Ne Exeat,* 1960 U. Ill. L.F. 102.) *Mandamus* is discretionary and is appropriate only where

there is a clear right to the requested relief, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ. (*League of Women Voters v. County of Peoria* (1987), 121 Ill. 2d 236, 242-43.) Though *mandamus* is extraordinary, we may consider a petition for the writ when it presents an issue that is novel and of crucial importance to the administration of justice, even if all the normal requirements for the writ's award are not met initially. *Knuepfer v. Fawell* (1983), 96 Ill. 2d 284, 291.

For a writ of prohibition to be issued, the action to be prohibited must be judicial or quasi-judicial in nature; the jurisdiction of the tribunal against which the writ is sought must be inferior to that of the issuing court; the action to be prohibited must be either outside the tribunal's jurisdiction or, if within its jurisdiction, beyond its legitimate authority; and the petitioner must be without any other adequate remedy. (*People ex rel. No. 3 J. & E. Discount, Inc. v. Whitler* (1980), 81 Ill. 2d 473, 479-80.) Actions of an administrative official, such as a Director of Revenue and his departmental hearings referee, may be sufficiently judicial in nature to be subject to a writ of prohibition. *Whitler*, 81 Ill. 2d at 480.

The office of *mandamus* is to provide affirmative rather than prohibitory relief (*People ex rel. Scott v. Kerner* (1965), 32 Ill. 2d 539, 543), though *mandamus* may lie to compel the undoing of an act (*People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 16). By contrast, a writ of prohibition is used to prevent judicial or quasi-judicial action that would be taken without jurisdiction or that would be beyond the scope of legitimate jurisdictional authority. (*People ex rel. Foreman v. Nash* (1987), 118 Ill. 2d 90, 97.) The relief sought by the four chief judges is prohibitory in nature, regardless of whether the Board has a "duty" or "authority" to act in accordance with any writ of *mandamus* that we might frame in

an attempt to provide the relief sought. Hence, we conclude that a writ of prohibition rather than of *mandamus* is the appropriate vehicle for awarding relief.

## a. Mandamus or Declaratory Judgment

Cook County argues that in reality the four chief judges are seeking a declaratory judgment and that this is one reason for us to refuse the requested writ. A similar argument was made in *People ex rel. Scott v. Kerner* (1965), 32 Ill. 2d 539, but, as we noted then (32 Ill. 2d at 544-46), frequently the declaration of a right to be enforced by *mandamus* will occur simultaneously with the writ's award, especially where "public issues of serious concern require speedy resolution" (32 Ill. 2d at 546). In any event, we have concluded that prohibition rather than *mandamus* lies.

## b. Writ or Administrative Review

In addition, Cook County urges that because administrative review by the appellate court is now available in representation cases and unfair labor practice cases (Ill. Rev. Stat. 1987, ch. 48, pars. 1609(i), 1611(e)), the four chief judges have a remedy other than the writ they seek.

However, the four chief judges point to appellate delay during any review as threatening the smooth operation of the court system and possibly causing irreparable harm to their employment relationship with their employees.

We agree that such results are likely and that appellate proceedings would inadequately remedy them. The effects of improperly ordered certification or bargaining would not easily be undone, if at all. Positions taken, agreements reached, and appropriations made would be on public view and formalized on the public record in a way seldom if ever equaled in private-sector collective

bargaining. Even if such consequences may be said to ensue from all public-sector certification or bargaining orders that are ultimately reversed on appeal, the vital public interest in an efficient, continually functioning, and independent court system furnishes additional reason for us to conclude that administrative review would be inadequate in this case. See *People ex rel. No. 3 J. & E. Discount, Inc. v. Whitler* (1980), 81 Ill. 2d 473, 483-84; *People ex rel. Swift v. Superior Court* (1935), 359 Ill. 612, 618-19; *People ex rel. Modern Woodmen of America v. Circuit Court* (1931), 347 Ill. 34, 40, 44-45.

Finally, according to the four chief judges' reply brief, the orders in Chief Judges Orenic's and McCarthy's cases were entered before the July 1, 1988, effective date of the statutory amendment granting them the right of administrative review (Ill. Rev. Stat. 1987, ch. 48, par. 1609(i)), and those chief judges would therefore not be entitled to such review. And, because of what we are advised was IBEW's loss of its representation election, Chief Judge Pearman might be held to lack standing as an "aggrieved" party (Ill. Rev. Stat. 1987, ch. 48, par. 1609(i)) to seek such review of the order entered in his case.

In any event, at the time of filing their petition, three of the four chief judges could not have obtained such administrative review, because no final Board orders had been entered in their cases. Hence, if they had a right to the relief sought at the time of filing their petition, that right should not necessarily be defeated by any subsequent theoretical ripeness of their cases for administrative review; and if the fourth petitioner, Chief Judge Rapp, had an independent right to the relief he sought when he joined in the petition, any concurrent availability of administrative review is no bar, particularly in light of the inadequacy of such review to avert the claimed potential harm to the judicial system.

### c. Prohibition and Issues of Inferior Jurisdiction

Cook County also contends that the writ of prohibition may not issue unless a petitioner's arguments "concern" the jurisdiction of an inferior tribunal (*People ex rel. No. 3 J. & E. Discount, Inc. v. Whitler* (1980), 81 Ill. 2d 473, 480) and that the Board has clear jurisdiction and authority to determine who is a public employer or joint employer. As we explained in *Whitler* (81 Ill. 2d at 479-80), one of the four conditions for issuance of a writ of prohibition is that "the action sought to be prohibited must be either outside the jurisdiction of the tribunal or, if within its jurisdiction, *beyond its legitimate authority*." (Emphasis added.)

Though their jurisdictional argument is somewhat confusingly stated, the four chief judges contend in essence that the Board exceeds at least its legitimate authority if not its very jurisdiction by certifying counties as joint employers with chief judges in regard to court employees and by disregarding constitutional questions surrounding the issue.

Arguments such as the four chief judges' need not be wholly correct in order to "concern" jurisdiction; thus, for this reason alone, Cook County's contention is inadequate. More importantly, the condition for issuance of a writ is that the inferior tribunal's jurisdiction or authority would actually be exceeded by the action to be prohibited, not merely that the petitioner argue "concerning" that issue. Because we find that the Board does in fact exceed its legitimate authority when it classifies chief judges and counties as joint employers of court employees, the condition is satisfied.

It is of no moment that the Board arguably lacks power to declare a statute such as the funding statutes unconstitutional and to refuse to follow it. While it may be that the Board had no choice other than to follow the

statutes, this does not mean that achieving an unconstitutional result by so doing lies within the Board's "legitimate authority." Even if the Board in a sense was statutorily left powerless to avoid straying outside its legitimate authority as ultimately defined by us, the fact remains that, by declaring the result of the Board's actions to be *ultra vires*, we can do for the Board what it could not do for itself, *i.e.*, construe the constitution so as to limit its authority and then keep the Board within that authority. Once having made such a declaration, as we do in this opinion, we can and do view the writ of prohibition's jurisdiction-related condition for issuance to have been met.

### d. Evidentiary Sufficiency

We need not address Cook County's contention that the four chief judges rely on incompetent summaries of factual matters as evidence. Cook County argues that to support their petition the four chief judges are not entitled to cite offers of proof, or statements contained in *amicus curiae* briefs filed in other Board cases, as evidence of county "co-employer" interference with judicial administration. The four chief judges reply that they are compelled to cite offers of proof because the precedent of successful arguments by Cook County itself in *County of Cook* led to exclusion of the actual proof from the Board record in the present case.

Even if Cook County is procedurally correct, the four chief judges' petition need not depend on such evidentiary submissions. If, as we decide, requiring a chief judge and a county to bargain as joint employers of court employees inevitably invades the administrative province of the courts, thereby contravening the separation of powers and tending to undermine the unity of the court system, we need not consider evidence that such a requirement already has impeded judicial administration.

Therefore, whether or not the four chief judges would be entitled to a writ of *mandamus*, Cook County has failed to show that prohibition does not lie in this cause.

## 2. *Carlson* as Decisive Precedent

Rather tentatively, the four chief judges assert in their brief that our decision in *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, "at least arguably" resolved the issues raised in the present cause and that we "could" find in their favor on grounds of *res judicata*. In *Carlson*, we held that, for purposes of the Act, a circuit court clerk rather than a chief judge was "the" employer of his deputy clerks. (116 Ill. 2d at 200.) In that case, the County of Kane had already conceded that it was not "the" employer of the deputy clerks. (116 Ill. 2d at 200.) After our opinion was filed, the circuit court clerk moved that we recall our mandate and issue a revised mandate specifically determining that he was his deputy clerks' sole employer. We then entered an order on April 27, 1987, denying the motion and stating: "The court resolved the question raised in this motion at page 6 of the slip opinion in this cause." That page contained the holding that a circuit court clerk was the employer of his deputy clerks. See *Carlson*, 116 Ill. 2d at 200.

Cook County responds that the doctrine of *res judicata* is inapplicable because neither the parties, nor the facts, nor the relief sought in *Carlson* is the same as in the present cause. (See *Housing Authority v. Young Men's Christian Association* (1984), 101 Ill. 2d 246, 254 (facts and relief); *Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 432 (parties).) In addition, Cook County contends that Kane County's concession of nonemployer status in *Carlson* means that *Carlson* decided only whether chief judges, rather than counties, might be joint employers of deputy clerks of the circuit court. See

*County of Kane v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 614, 621.

We agree with Cook County that neither *res judicata* nor the issues for decision in *Carlson* allow our opinion in that case to be viewed as decisive of the issues in the present one.

### 3. Standing of Chief Judges

Cook County contends that Chief Judges Orenic and McCarthy should be dismissed as petitioners because of their statement that they have nothing immediately at stake. In their brief, the four chief judges have not replied to this contention.

We consider that, for reasons of judicial economy as well as by reason of the Board's continuing classification of the chief judges as joint employers even after loss of a representation election, the four chief judges retain standing to seek relief. In addition, our noticing Chief Judges Orenic's and McCarthy's resignations as chief judges does not lead to abatement or compel dismissal of the action as to their claims, since their successors might be substituted as parties merely on motion or suggestion. Ill. Rev. Stat. 1987, ch. 110, pars. 2—1008(a), (d).

### B. Chief Judges and Counties as Joint Employers

We now turn to the principal question in the case, the joint-employer issue.

As labor law has developed, largely in a Federal and private-sector context, the test for existence of joint employers has come to be defined as whether "two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." (*National Labor Relations Board v. Browning-Ferris Industries of Pennsylvania, Inc.* (3d Cir. 1982), 691 F.2d 1117, 1124.)

Relevant factors include the putative joint employer's role in "hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job." Jansonius, *Use and Misuse of Employee Leasing*, Lab. L.J. 35, 36 (Jan. 1, 1985) (citing cases). See generally Annot., 73 A.L.R. Fed. 609 (1985).

The issues of the present case were foreshadowed in *County of Kane v. Carlson* (1987), 116 Ill. 2d 186. In that case, we observed that application of the Act to the judicial branch does not *per se* intrude unconstitutionally on judicial authority, because separation of powers "does not require, nor could it realistically demand, complete independence among the branches of government." (116 Ill. 2d at 206.) However, we distinguished between Board orders "directly impairing the administrative and supervisory authority of the judiciary" and orders that have merely "an indirect or collateral effect, if any." (116 Ill. 2d at 209.) We noted that judicial review of Board or arbitral orders can enable courts to provide "a necessary check on intrusions into those powers reserved to the judicial branch." (116 Ill. 2d at 209.) We emphasized that our decision was based simply on "the posture of the proceedings before us" (116 Ill. 2d at 210) and that many other possible constitutional questions, not then presented, might arise "as the broad provisions of the Act are applied to the unique workings of the judicial branch" (116 Ill. 2d at 210).

We held in *Drury v. County of McLean* (1982), 89 Ill. 2d 417, that, under section 18(b) of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, §18(b)), clerks of circuit courts are nonjudicial members of the judicial branch of State government and are not county officers (*Drury*, 89 Ill. 2d at 424), even though county boards are required to pay and, subject to statutory limits, to

fix their salaries. The requirement that county boards provide circuit court clerks' salaries was imposed by the General Assembly. (Ill. Rev. Stat. 1987, ch. 25, par. 27.3.) In turn, the General Assembly's power to prescribe the manner of funding the clerks' salaries is derived from section 18(c) of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, §18(c)), which states, "The salaries of clerks *and other non-judicial officers* shall be as provided by law." (Emphasis added.)

"It is within the legislature's constitutional powers to require that counties pay the salary and expenses of the circuit court clerk. The fact that counties pay the salaries and expenses of circuit court clerks does not make the office of circuit court clerk a county office." (*Drury*, 89 Ill. 2d at 425.) Similarly, the fact that a county pays the salaries of other nonjudicial employees in the judicial branch, or even administers personnel policies covering them by agreement with the judicial branch, does not in constitutional or statutory terms make the county their employer. Rather, the State, personified by the chief judge of each circuit, is their employer.

The constitutional tripartite separation of powers strengthens our conclusion that the State, not a county, is the sole employer of all court employees. Traditional principles of labor law, developed mostly in a Federal context that has been largely limited to private-sector employment relations, might arguably suggest that, upon viewing the totality of their economic relationships (see, *e.g.*, *Secretary of Labor v. Lauritzen* (7th Cir. 1987), 835 F.2d 1529, 1534-35; *Beliz v. W.H. McLeod & Sons Packing Co.* (5th Cir. 1985), 765 F.2d 1317, 1327), the counties and the State are to be considered joint employers of court employees whose salaries the counties pay. However, given our responsibility to reconcile Illinois public-sector labor law with Illinois constitutional principles whenever possible, we must construe the labor law term

"employer" in a way that comports with the legal authority and responsibility of counties and courts respectively as well as with our constitution's separation of powers and unified court system.

In this connection, we must say that Vermilion and Will Counties' constitutional arguments altogether miss the mark. The Illinois Constitution's article VII intergovernmental-cooperation provisions (Ill. Const. 1970, art. VII, §§10(a), (c)) deal only with otherwise constitutional compacts, even if imposition of joint-employer status on an unwilling chief judge or county could be considered a compact. Therefore, article VII cannot validate any "compact" that is contrary to separation of powers (Ill. Const. 1970, art. II, §1) or the inherent powers of a unified court system (Ill. Const. 1970, art. VI, §1).

As to the joint-employer question posed by the present action, the fact that legislation is expressly authorized for instituting county-provided supplements to judicial salaries (Ill. Const. 1970, art. VI, §14) adds nothing to the weight of authorization for legislation establishing county funding of courts' nonjudicial employees (Ill. Const. 1970, art. VI, §18(c)). Neither authorizing clause of the constitution necessarily implies ultimate county control of the number, salary, or employment conditions of court personnel, as becomes obvious at once when the case of judges (Ill. Const. 1970, art. VI, §14) is considered. Thus, to the extent that a county's joint-employer status at the bargaining table effects such control, it lacks any authority in the cited sections of article VI.

When the National Labor Relations Act (NLRA), ch. 372, 49 Stat. 449 (1935) (codified as amended at 29 U.S.C. §§151 through 169 (1982 & Supp. IV 1986)), was adopted in 1935, it exempted governments from mandatory collective bargaining. (See NLRA §2(2), 29 U.S.C. §152(2) (1982).) The next five decades of labor law therefore focused almost entirely on the private economic sec-

tor's employment relations. As late as 1984, it was possible to write that "[l]abor law casebooks and treatises often omit the subject of public employment entirely" and that "[t]here has been no scholarly treatment integrating the three major bodies of law that shape public employment—civil service law, collective bargaining law, and constitutional law." Note, *Developments in the Law—Public Employment*, 97 Harv. L. Rev. 1611, 1614 (1984).

As at least one commentator points out, "the appropriations process has become a·major factor in public sector employee relations" (Allshouse, *The Role of the Appropriations Process in Public· Sector Bargaining*, 17 Urb. Law. 165, 165 (1985)), and "[o]ne of the basic differences between private and public sector collective bargaining is the involvement of the legislative branch" (17 Urb. Law. at 197, citing *Abood v. Detroit Board of Education* (1977), 431 U.S. 209, 228, 52 L. Ed. 2d 261, 279-80, 97 S. Ct. 1782, 1796). Yet, despite recognition of this and numerous other differences between public- and private-sector collective bargaining, "the statutes enacted for public sector bargaining, and the administrative rules and decisions *** are modeled on the *** private sector," yielding a "cognitive dissonance" that often impedes fruitful analysis. (Summers, *Bargaining in the Government's Business: Principles and Politics*, 18 U. Tol. L. Rev. 265, 265, 281 (1987).) Difficulties have been noted in attempting to institutionalize private-sector labor relations practices in the Federal government's collective-bargaining system, which prohibits strikes and greatly limits negotiations on matters of wages and hours. (Thornton, *Policies and Practices of the Federal Labor Relations Authority*, Gov't Union Rev., Spring 1987, at 1.) With good reason, it has been said that "[s]imply to import the private sector bargaining regime into the public sector would be to neglect the special role of the public employer as representative

of the public interest." 97 Harv. L. Rev. at 1681 (citing cases).

Reflecting on the differences between public and private sectors' orientations to labor law, but striving not to overstate those differences, we have examined the limits of county involvement with funding the court system in order to determine whether, given those limits, the Board is allowed by Illinois labor and constitutional law to consider counties as joint employers of court employees. We conclude that it is not.

Although membership in public-sector labor unions quadrupled nationally from 1956 to 1978 (Wilson & Elder, *Collective Bargaining: The Unionization and Decentralization of Illinois Counties*, Gov't Union Rev., Spring 1988, at 23, 23, citing Seroka, *The Determinants of Public Employee Union Growth*, 5 Rev. Pub. Personnel Admin. 5, 5 (1985)), "Illinois counties are just beginning to feel the impact of the state's collective bargaining law" (Gov't Union Rev., Spring 1988, at 37). See also McCollum, *The 1983 Ohio and Illinois Public Employee Bargaining Laws*, Gov't Union Rev., Winter 1986, at 46; McCollum & Wolters, *Public Sector Bargaining Legislation in Illinois and Ohio, 1983*, 14 J. Collective Negotiations Pub. Sector 161 (1985).

Counties have the power and duty to set and pay salaries of circuit courts' nonjudicial employees (see *People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 17-18), but this authority is tempered by the courts' responsibility to administer justice and their retention of inherent power "to protect themselves and the public they serve against default of their constitutional obligations" so that they may "perform their judicial functions with efficiency, independence and dignity" (*Scholz*, 77 Ill. 2d at 19). The retained power of the courts includes power to "require production of the facilities, personnel and resources reasonably neces-

sary" to the courts' operations. *Knuepfer v. Fawell* (1983), 96 Ill. 2d 284, 293.

Thus, not only are nonjudicial employees of a court the employees of a State agency rather than of a county, but even the counties' salary-setting and facilities-providing function is subject to the courts' own ultimate power to ensure reasonable adequacy. Except for setting and paying salaries and providing facilities subject to ultimate court power, the counties are entitled to no other role in regard to the courts' nonjudicial employees that might arguably be considered the role of a joint employer. And, as we have previously stated, the Illinois Constitution contemplates "[o]nly one unified court system operating statewide" and "does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entity." *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 542; accord *Drury v. County of McLean* (1982), 89 Ill. 2d 417, 423-24; *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 207-08.

In addition, although separation of powers does not mean a complete divorce among the branches of government (*People ex rel. Sheppard v. Money* (1988), 124 Ill. 2d 265, 283-84) and legislation may permissibly have a peripheral effect on judicial administration (*People v. Williams* (1988), 124 Ill. 2d 300, 307), separation does mean that "the whole power of two or more *** departments shall not be lodged in the same hands" (*Field v. People ex rel. McClernand* (1839), 3 Ill. (2 Scam.) 79, 84). If the Board were allowed to compel chief judges to share their collective-bargaining authority with counties, and if counties' assertion of funding authority then impeded or frustrated the chief judges' efforts to bargain, the "whole power" of the chief judges in the vital administrative area of employment relations would be effectively lodged in the counties' hands. This would be far more than a "pe-

ripheral effect" on judicial administration; it would be an evisceration of the courts as free and independent employers of their own employees, since authority over compensation is central to employer status.

At the collective-bargaining table, salary and other incidents of employment are intertwined. No party can be expected to consider the one independently of the other. Concessions regarding salary will often be linked with some favorable modification of other employment terms, and vice versa. If a county were intransigent on a salary issue, it might prevent agreement between employees and a chief judge as to other working conditions. It thus becomes obvious that the counties and the courts could not practicably bifurcate "employer" authority so that the counties might bargain salaries and the courts might separately bargain other terms of employment.

Labor representatives at the bargaining table know that any agreement reached will be affected by the county boards' salary-setting and appropriations authority, but similar knowledge prevails when labor representatives bargain with agencies of the executive branch for agreements that will be affected by the General Assembly's budgetary authority. (See Henkel & Wood, *Collective Bargaining by State Workers: Legislatures Have the Final Voice in the Appropriation of Funds*, 11 J. Collective Negotiations Pub. Sector 215, 217 (1982).) The General Assembly's budgetary authority with regard to the executive branch certainly surpasses that of county boards with regard to the judicial branch. Just as the General Assembly's appropriations role fails to make that body the joint employer of executive-branch employees (see Allshouse, *The Role of the Appropriations Process in Public Sector Bargaining*, 17 Urb. Law. 165, 167-68), the counties' appropriations role fails all the more to make counties the joint employers of the circuit courts' nonjudicial employees.

Cook County's citation of *Scholz* to the contrary is unavailing. In *Scholz*, this court directed expungement of portions of a chief judge's administrative order that had set nonjudicial employees' salaries at levels somewhat higher than those set by a county board. However, the basis for expungement was merely our conclusion from the record that the county board had not acted so unreasonably as to warrant the chief judge's invocation of his inherent powers (*Scholz*, 77 Ill. 2d at 18), and we went on to affirm at length the existence of those powers (*Scholz*, 77 Ill. 2d at 19-22; see *Knuepfer*, 96 Ill. 2d at 292-93). See generally Annot., 59 A.L.R.3d 569 (1974).

For this reason, it is disingenuous for Cook County to argue in its brief that no precedent supports courts' authority to "appropriate" funds. Though Cook County contends that such an "appropriation" authority would contravene the separation of powers, the fact is rather that a county board's effective veto of the courts' employment of needed personnel would violate not only the separation of powers but also the inherent authority of the courts. (See *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 542.) Moreover, the four chief judges contend for no "appropriation" power on the part of the courts, nor do we hold that such power exists as such; rather, the courts have the power in truly needful cases to order that an appropriation be made by those officials entitled to make it. In turn, those officials can review their entire budgetary scheme and its supporting revenue base so as to make any needed adjustments to accommodate such an appropriation, which courts would not be in position to do if they were to essay a direct appropriation themselves. Nevertheless, without suffering an invasion of their rightful authority, the courts cannot allow counties to control or interfere with their employment and collective-bargaining decisions by assuming a joint-employer role in labor negotiations.

We are also mindful that *Scholz* was decided before passage of the Act. Therefore, even to the extent that *Scholz* might be read by some to support a county's limited power to set nonjudicial employees' salaries independently of the court (but see *Scholz*, 77 Ill. 2d at 19 (the public interest requires that the three branches of government work in harmony); accord *Knuepfer*, 96 Ill. 2d at 293), and even though the judicial branch must give proper deference to the county boards as the "governmental branch having initial responsibility" for setting salaries (see *Knuepfer*, 96 Ill. 2d at 293, 295), *Scholz* cannot be viewed as decisive authority for construing the Act so as to define a county as a joint employer of circuit court employees for collective-bargaining purposes. On the contrary, a narrow interpretation of a statute granting powers to an administrative agency may be necessary to sustain its constitutionality. 3 N. Singer, Sutherland on Statutory Construction §65.02, at 222 (Sands 4th ed. 1986).

Cook County's citation of *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166, is likewise insufficient. Whether or not that case correctly applied the traditional labor law test for joint-employer status, it involved two units of local government, one of which created the other by ordinance. The present cause, involving a local government unit and the independent judicial branch of State government, is easily distinguished.

We are aware that the Washington Supreme Court has reached a different conclusion on a similar question (*Zylstra v. Piva* (1975), 85 Wash. 2d 743, 539 P.2d 823), but we decline to follow its reasoning. In *Zylstra*, the court's conclusion rested in large part on the fact that the Public Employees' Collective Bargaining Act (Wash. Rev. Code §§41.56.010 through 41.56.950 (1972)) applied to county but not State employees (*Zylstra*, 85 Wash. 2d at 748, 539 P.2d at 826). The court expressed its desire to preserve

for the affected employees "as large a sphere of collective bargaining as possible" (*Zylstra*, 85 Wash. 2d at 748, 539 P.2d at 826) by holding that, for purposes of wage bargaining, employees of a juvenile court were employees of the county, even though they were employees of the State for purposes of bargaining over hiring, working conditions, and other matters. Moreover, unlike Illinois courts, the juvenile court in Washington was a creature of the legislature rather than of the constitution. *Zylstra*, 85 Wash. 2d at 749, 539 P.2d at 827.

Rather than subscribe to the Washington Supreme Court's analysis in *Zylstra*, we find persuasive part of the Michigan Supreme Court's opinion in *Judges of the 74th Judicial District v. Bay County* (1971), 385 Mich. 710, 190 N.W.2d 219. In *Bay County*, the Michigan court decided that State district court employees "are not employees of the county, city or other district control unit, even though they are paid by the district control unit." (*Bay County*, 385 Mich. at 723, 190 N.W.2d at 224.) Therefore, a collective-bargaining agreement executed by a county board as employer was held not to bind the judicial district that embraced the county. (*Bay County*, 385 Mich. at 724, 190 N.W.2d at 224.) This conclusion was reached even though each county board had appropriations authority over the court's budget. *Bay County*, 385 Mich. at 725-26, 190 N.W.2d at 225-26; Mich. Comp. Laws Ann. §600.8271(1) (West 1968).

The parties to collective bargaining—that is, chief judges and labor representatives—as well as county boards must, of course, be aware that chief judges and county boards have the practical task of working together in an attempt to effectuate any collective-bargaining agreements reached. (See *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 208 (some blurring of interdependent branches' roles necessary to smooth functioning); *Knuepfer v. Fawell* (1983), 96 Ill. 2d 284, 297 (Simon, J.,

dissenting) ("Good government requires accommodation between its branches"); *People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 19 (public interest requires branches to work in harmony); accord *Kotche v. County Board* (1980), 87 Ill. App. 3d 1127, 1132.) However, this fact does not require the counties to be seated at the bargaining table as joint employers.

Any conflict between traditional labor law principles and constitutional principles must be resolved in favor of the latter; and treating county boards as joint employers with chief judges in respect of the courts' nonjudicial employees would unduly trench on the judicial branch's separate and equal status (see *Scholz*, 77 Ill. 2d at 19). The mere need for county board approval in order to effectuate judicial-branch salaries negotiated at the bargaining table does not logically mandate inclusion of the counties in the bargaining. Constitutional considerations furnish the remaining rationale for their exclusion.

Accordingly, a writ of prohibition will issue, prohibiting the Board (1) from certifying or maintaining in effect the certification of any bargaining unit in which a county is listed as a joint employer of judicial-branch employees, and (2) from basing any finding of unfair labor practices on a chief judge's refusal to bargain, together with a county, in a role as joint employer of judicial-branch employees. We therefore need not reach additional questions raised by some of the parties as to defining the substantive areas of bargaining in which chief judges and counties might each play a joint-employer role.

*Writ awarded.*

WARD and CALVO, JJ., took no part in the consideration or decision of this case.