# Illinois Official Reports

## Supreme Court

***Edwards v. Atterberry*, 2019 IL 123370**

| | |
|---|---|
| Caption in Supreme Court: | KENIN L. EDWARDS, Petitioner, v. HONORABLE MICHAEL L. ATTERBERRY *et al.*, Respondents. |
| Docket No. | 123370 |
| Filed<br>Rehearing denied | February 22, 2019<br>May 20, 2019 |
| Decision Under Review | Original action for writ of prohibition. |
| Judgment | Writ denied. |
| Counsel on Appeal | Robert J. Hanauer, of Hanauer Law Office, LLC, of Peoria, for petitioner.<br><br>Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick, Daniel B. Lewin, and Joshua M. Schneider, Assistant Attorneys General, of Chicago, of counsel), for respondents. |

Justices

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas and Theis concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion, joined by Justices Burke and Neville.

Justices Kilbride, Burke, and Neville dissented upon denial of rehearing, without opinion.

## OPINION

¶ 1    This is an original action for a writ of prohibition. Petitioner Kenin L. Edwards asks this court to issue an order to prohibit respondent Judge Michael L. Atterberry from conducting a sentencing hearing or any other action in the underlying criminal case.

¶ 2                                     BACKGROUND

¶ 3    Edwards was charged by information with two violations of the Timber Buyers Licensing Act (225 ILCS 735/1 *et seq.* (West 2016)). The information referred to each of these violations as constituting a Class A misdemeanor, which Edwards disputes. Edwards filed several pretrial motions, including motions to dismiss that, relevant here, contested the circuit court's subject-matter jurisdiction. The State was twice allowed to amend the information. The pertinent version of the information set forth the following counts. Count I charged Edwards with

> "the offense of UNLAWFULLY ACTING AS A TIMBER BUYING AGENT FOR MULTIPLE LICENSED TIMBER BUYERS, in violation of SECTION 10 of ACT 735 of CHAPTER 225 of the Illinois Compiled Statutes of said State and Administrative Rule SECTION 1535.1(b) of PART 1535 of SUB-CHAPTER d of CHPATER [*sic*] I of TITLE 17, pursuant to SECTION 1535.60(a) of PART 1535 of SUB-CHAPTER d of CHAPTER I of TITLE 17, in that the said defendant knowingly[1] acted as an authorized agent for multiple licensed timber buyers, being listed as an agent for timber buyer Trent Copelen and acted as agent for timber buyer Jonathan Luckett and represented himself as a timber buyer when attempting to enter into an agreement with Donald Cook.
>
>        Class A Misdemeanor"

Count II charged Edwards with:

> "the offense of UNLAWFULLY ACTING AS A TIMBER BUYING AGENT FOR MULTIPLE LICENSED TIMBER BUYERS, in violation of SECTION 10 of ACT 735 of CHAPTER 225 of the Illinois Compiled Statutes of said State and Administrative Rule SECTION 1535.1(b) of PART 1535 of SUB-CHAPTER d of CHPATER[*sic*] I of TITLE 17, pursuant to SECTION 1535.60(a) of PART 1535 of

---

[1]The word "knowingly" was added by a handwritten addition in the right margin, dated "7-31-17" and initialed by State's Attorney Ramon M. Escapa.

SUB-CHAPTER d of CHAPTER I of TITLE 17, in that the said defendant knowingly[2] acted as an authorized agent for multiple licensed timber buyers, being listed as an agent for timber buyer Trent Copelen and acted as an agent for timber buyer Jonathan Luckett in selling timber to Leroy Yoder of Plainview Pallet, Tom Farris of Farris Forest Products, John Peters of River City Hardwood, Inc., Norman Hochstetler of Oak Ridge Lumber, LLC, and Michael Eichen of Eichen Lumber Company, Inc.

Class A Misdemeanor"

A jury found Edwards guilty of both counts.

¶ 4 Thereafter, Edwards filed a motion for a supervisory order and for leave to file a complaint for a writ of prohibition. See Ill. S. Ct. Rs. 383, 381 (eff. July 1, 2017). This court denied the motion for a supervisory order but allowed Edwards leave to file a complaint for a writ of prohibition. Pending disposition of the complaint, this court stayed the circuit court case.

¶ 5                                        ANALYSIS

¶ 6 Edwards seeks to prohibit respondent, Judge Michael L. Atterberry, from conducting a sentencing hearing or from taking any other action in the underlying criminal case.[3] Edwards claims that, because the information charged him with violating regulations and not a statute defining a criminal offense, the circuit court lacked subject-matter jurisdiction. Thus, Edwards frames the issue as whether there is subject-matter jurisdiction in a case alleging a regulatory violation as a crime. We begin by setting forth the pertinent law and requirements relating to a writ of prohibition.

¶ 7 Pursuant to article VI, section 4(a), of the Illinois Constitution of 1970, this court may exercise original jurisdiction in cases relating to prohibition. Ill. Const. 1970, art. VI, § 4(a); *People ex rel. Foreman v. Nash*, 118 Ill. 2d 90, 96 (1987). A writ of prohibition is an extraordinary remedy. *Nash*, 118 Ill. 2d at 96. "A writ of prohibition lies to prevent a judge from acting where he has no jurisdiction to act or to prevent a judicial act which is beyond the scope of a judge's legitimate jurisdictional authority." *Daley v. Hett*, 113 Ill. 2d 75, 80 (1986).

¶ 8 A writ of prohibition will not issue unless four requirements are met. *Zaabel v. Konetski*, 209 Ill. 2d 127, 131-32 (2004). First, the action to be prohibited must be of a judicial or quasi-judicial nature. *Id.* at 132. Second, the writ must be directed against a tribunal of inferior jurisdiction. *Id.* Third, "the action to be prohibited must be outside the tribunal's jurisdiction or, if within its jurisdiction, beyond its legitimate authority." *Id.* Fourth, there must not be any other adequate remedy available to the petitioner. *Id.* But see *Nash*, 118 Ill. 2d at 97 (where the issue presented is sufficiently important to the administration of justice, this court may issue a writ of prohibition even if all of the aforementioned requirements are not met).

¶ 9 The first and second requirements are not disputed. The parties do contest the third and fourth requirements. However, we need only address the fourth requirement, given the

---

[2]As with count I, "knowingly" was added by hand, dated "7-31-17," and initialed by State's Attorney Ramon M. Escapa.

[3]Judge Scott J. Butler is also named as a respondent. He apparently handled pretrial motions before the case was transferred to Judge Atterberry. Edwards does not specify what exactly he seeks to prohibit Judge Butler from doing. Because respondents' brief was filed in both names, we will refer to respondents rather than respondent.

circumstances of this case. See *id.* at 95 (first examining whether writs of *mandamus* or prohibition or supervisory orders would constitute appropriate remedies in that case).

¶ 10 As noted, the fourth requirement needed for a writ of prohibition is that there must not be any other adequate remedy available to the petitioner. *Zaabel*, 209 Ill. 2d at 132. Respondents point out that Edwards filed a timely posttrial motion. Specifically, Edwards filed a combined motion for entry of a judgment notwithstanding the verdict, a motion for a new trial, and a motion in arrest of judgment, pursuant to sections 116-1 and 116-2 of the Code of Criminal Procedure of 1963. 725 ILCS 5/116-1, 116-2 (West 2016). However, before the circuit court could rule on that motion, Edwards filed a motion seeking both a supervisory order and leave to file a complaint for prohibition in this court. We allowed the motion in part. Specifically, this court denied Edwards's motion for a supervisory order but allowed him leave to file the complaint for a writ of prohibition. This court stayed circuit court proceedings pending disposition of the prohibition action. We now turn to the parties' arguments relating to the fourth requirement for a writ of prohibition.

¶ 11 Edwards argues that no other adequate remedy exists and that the case could be resolved simply and expeditiously on jurisdictional grounds via a writ of prohibition. Edwards suggests that it would be futile to await the circuit court's disposition of his posttrial motion because respondents previously ruled that the circuit court had jurisdiction and, over Edwards's objection, proceeded to trial. Edwards notes that he could be sentenced to jail. He adds that suspension or revocation of a timber buyer's license may occur upon a finding of guilt by a court of law for a violation of part 1535 of Title 17, Timber Buyer Licensing and Harvest Fees. 17 Ill. Adm. Code 1535.60 (2003). Edwards represents that the Department of Natural Resources has already initiated proceedings against his license based upon the jury verdict below. He argues that *Zaabel* demonstrates that he "would be irremediably harmed if he were required to press his claim that the circuit court lacks subject matter jurisdiction within the normal appellate process." 209 Ill. 2d at 132.

¶ 12 Respondents maintain that Edwards could obtain relief on his posttrial motion or otherwise on appeal. As to Edwards's asserted reasons for why the normal appellate process is inadequate, respondents note that potentially facing the collateral consequences of a conviction pending appeal is true of every criminal case. Additionally, respondents comment that Edwards does not explain why the potential loss of his license recommends resolving his claims here instead of in the appellate court. Respondents observe that Edwards might receive probation. See 730 ILCS 5/5-4.5-55(d) (West 2016) (probation may be imposed for Class A misdemeanors). However, if Edwards is sentenced to imprisonment, respondents note that, pursuant to Illinois Supreme Court Rule 609 (eff. Feb. 6, 2013), Edwards may seek a stay of his sentence on appeal. With these arguments in mind, we next briefly discuss a case that reached this court under somewhat similar circumstances.

¶ 13 In *Moore v. Strayhorn*, 114 Ill. 2d 538, 540 (1986), this court granted the petitioner, Moore, leave to file a complaint for an original writ of *mandamus* or prohibition or a supervisory order to direct the circuit judge to vacate the portion of the sentence that denied him credit for time served. This court concluded that

> "leave to file that petition was improvidently granted because Moore should have been left to his alternative remedy of appealing the sentencing order to our appellate court. Applications to this court for original actions of *mandamus* and prohibition or for

supervisory orders should not be allowed as a way of circumventing the normal appellate process." *Id.*

Nonetheless, this court elected to exercise its discretionary supervisory authority to resolve the matter in light of judicial economy and because Moore's time to appeal had already expired. *Id.*

¶ 14     As in *Moore*, we determine that Edwards should have been left to his alternative remedy— the normal appellate process. We reject Edwards's argument that he lacks any other adequate remedy. Indeed, Edwards has a posttrial motion pending in the circuit court. Even if that motion is unsuccessful, Edwards could obtain relief on appeal to the appellate court. Beyond that, Edwards could petition for leave to appeal to this court. Ill. S. Ct. R. 315 (eff. July 1, 2018). Critically, and unlike in *Moore*, Edwards's time to appeal has not expired. Quite simply, the entire extent of the normal appellate process is yet available to Edwards should the trial court deny his posttrial motion.

¶ 15     Edwards criticizes the nature of respondents' "what if?" arguments. As an example, respondents contend that Edwards may receive probation instead of being imprisoned. However, the fact remains that these uncertainties exist because Edwards did not await disposition of his posttrial motion or sentencing prior to his seeking prohibition in this court. We resolutely disapprove of Edwards's argument that the case could be resolved simply and expeditiously on jurisdictional grounds. Because one route may be most expeditious does not render an alternative route inadequate, particularly in the context of an original action for a writ of prohibition. Original actions of prohibition may not be used to circumvent the normal appellate process. *Nash*, 118 Ill. 2d at 97. A writ of prohibition is "normally to be awarded only in *rare* instances where none of the ordinary remedies is available or adequate." (Emphasis added.) *Hughes v. Kiley*, 67 Ill. 2d 261, 266 (1977).

¶ 16     Next, Edwards maintains that, even if he were to utilize the ordinary appellate process and eventually prevail, he would still sustain irremediable harm because a stay under Illinois Supreme Court Rule 609 (eff. Feb. 6, 2013) would not apply to the license revocation proceedings. Edwards contends that his business will falter and his livelihood will be jeopardized if he is jailed or has his license revoked.

¶ 17     To show that being sentenced to jail does not constitute irremediable harm, respondents cite *Hughes*, arguing that prohibition was denied to criminal defendants who were not yet convicted because they could await conviction and appeal. 67 Ill. 2d at 267-68. Edwards asserts that *Hughes* is inapposite because it concerns a petition for a writ of *habeas corpus* alleging a due process violation stemming from the way that a prosecutor allegedly spoke to a grand jury. *Id.* at 265-66. Rather, *Hughes* involved three defendant-petitioners. *Id.* at 264-65. Two of the defendant-petitioners petitioned this court for writs of prohibition seeking to prevent further proceedings in their cases after the trial judge denied their motions to quash their indictments. *Id.* Defendant-petitioners had argued that their due process rights had been violated by an assistant state's attorney's conduct before the grand jury. The third defendant-petitioner, who was charged in a different case, filed a petition for writ of *habeas corpus* seeking his discharge and release after the trial judge denied his motion to quash the indictment. *Id.* at 265. All three defendant-petitioners argued that they were entitled to the extraordinary relief of prohibition or *habeas corpus* because no other remedy existed that did not require them to suffer extreme hardship prior to its availability. *Id.* at 266.

¶ 18     This court denied the petitions for a writ of prohibition and quashed the writ of *habeas corpus*. *Id.* at 268. As to the writs of prohibition, the court noted that prohibition was not an appropriate remedy because no question of jurisdiction was at issue. *Id.* at 267-68. However, the court commented that the trial judge's rulings on the motions to quash the indictments were still subject to direct review upon conviction. *Id.* at 268. As to the writ of *habeas corpus*, this court also commented that the defendant-petitioner's remedy was instead by means of direct review. *Id.* Thus, Edwards's attempt to distinguish *Hughes* fails.

¶ 19     As to Edwards's argument that his business and livelihood will be harmed due to the loss of his timber buyer's license and delay occasioned by the appellate process, this argument also falls short. Respondents rightly note that Edwards is essentially complaining of collateral consequences that may occur pending an appeal. See *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009) ("[c]ollateral consequences *** are effects upon the defendant that the circuit court has no authority to impose" and that "result[ ] from an action that may or may not be taken by an agency that the trial court does not control"). Were we to consider such consequences indicative of irremediable harm, then the normal appellate process would nearly always prove inadequate.

¶ 20     Here, the trial court did not order that Edwards's license be revoked. Instead, the finding of guilt triggered the collateral consequence of the Department of Natural Resources taking steps to revoke his license. Of note, Edwards offers only a vague portrayal of the situation surrounding his timber buyer's license. In Edwards's brief, he represents that he has a timber buyer's license. Respondents' brief notes that, "[t]hough not of record here, petitioner appears to have obtained a license after the transactions below." In reply, Edwards states that "[r]espondents properly recognize that petitioner obtained a timber buyer's license after the alleged transactions at issue in the Schuyler County case." Then, Edwards declares that the Department of Natural Resources has already initiated and continued to pursue proceedings against his license. Finally, at oral argument, counsel suggested that this court take judicial notice "that the IDNR after this court stayed proceedings in Schuyler County attempted and did for a period of 92 days suspend Mr. Edwards's since acquired timber buyer's license."

¶ 21     Putting aside the fact that the license revocation proceeding is an entirely separate matter, Edwards also has not provided any documentation relating to his licensure or the license revocation proceedings. This court is left to guess when exactly Edwards obtained a license; if the Department of Natural Resources had other bases for seeking suspension or revocation of his license; what effect, if any, an award of prohibition would have upon the agency proceeding; whether Edwards's license is at present suspended, revoked, or reinstated; and the precise status of the suspension/revocation proceeding. In this circumstance, without more, Edwards has not demonstrated irremediable harm so as to warrant excusal from the normal appellate process. See *Zaabel*, 209 Ill. 2d at 132 (petitioner has the burden to show that he would be irremediably harmed).

¶ 22     Still, even if no irremediable harm is apparent, Edwards urges this court to exercise its discretion and consider this action. See *id.* (although petitioner did not demonstrate that the normal appellate process would not provide an adequate remedy, court chose to address the merits of petitioner's complaint for prohibition because issue was important to the administration of justice); *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 468 (1989) ("Though *mandamus* is extraordinary, we may consider a petition for the writ when it

presents an issue that is novel and of crucial importance to the administration of justice, even if all the normal requirements for the writ's award are not met initially."); *Moore*, 114 Ill. 2d at 540 (despite finding the normal appellate process to be adequate, court exercised its discretion and addressed the merits of Moore's arguments).

¶ 23    In *People ex rel. Foreman v. Nash*, this court began its analysis by considering whether writs of *mandamus* or prohibition or supervisory orders would be proper remedies in that case. 118 Ill. 2d at 95. The court concluded that *Moore* was controlling and noted that the State had already presented arguments on direct appeal to the appellate court, on petition for rehearing, and to this court via a petition for leave to appeal. *Id.* at 98. This court explained that "[a]n extraordinary remedy such as a writ of *mandamus* or a writ of prohibition should not be used as a substitute for another appeal." *Id.* The court did not consider the questions presented therein to be of such importance to the administration of justice to require this court's exercise of its supervisory authority. *Id.* Thus, the court concluded that the State's motion was improvidently granted and did not reach the merits of the parties' arguments. *Id.*

¶ 24    Similarly, we see no reason to look past Edwards's failure to show that he lacks any other adequate remedy and nevertheless address the merits of Edwards's complaint. Unlike in *Moore*, Edwards's time to appeal has not expired. See *Moore*, 114 Ill. 2d at 540 ("Our failure to dispose of this action *** would waste judicial resources as well as be unjust to Moore, because his time to appeal has now expired."). We likewise do not consider the issue presented to be important to the administration of justice. See *Foreman*, 118 Ill. 2d at 98 ("[W]e do not consider that the questions as presented here are of such importance to the administration of justice that they necessitate this court's exercise of its supervisory authority."). Accordingly, we refuse to address the merits of the parties' remaining arguments.

¶ 25                                    CONCLUSION

¶ 26    For a writ of prohibition to issue, a petitioner must demonstrate that all four of its requirements have been met. *Zaabel*, 209 Ill. 2d at 131-32. Edwards fails to establish that the normal appellate process would not afford an adequate remedy or will cause him irremediable harm. We decline to nonetheless address the merits of Edwards's complaint because it does not present an issue that is important to the administration of justice.

¶ 27    Writ denied.

¶ 28    JUSTICE KILBRIDE, dissenting:

¶ 29    Petitioner, Kenin L. Edwards, was convicted by a jury of two counts of the purported crime of "unlawfully acting as a timber buying agent for multiple licensed timber buyers." Before the trial court could sentence Edwards, however, this court allowed his petition seeking prohibition relief and stayed sentencing. The crux of Edwards's petition was that he had been charged, and convicted, of an insufficiently defined regulatory offense. Indeed, a review of the applicable administrative rule demonstrates that Edwards has been convicted of an alleged regulatory offense that does not exist. In addition, his convictions are based on alleged conduct that does not violate the regulation relied on in the State's information.

¶ 30    The majority fails to acknowledge this injustice. Instead, the majority agrees with the State that Edwards should relitigate this matter in the ordinary appellate process because he does not

- 7 -

meet the formal requirements for prohibition relief. *Supra* ¶¶ 24-26. Even if I agreed with the majority that Edwards is not entitled to prohibition relief, I cannot agree with the majority's decision to ignore the critical error underlying Edwards's convictions. For the reasons explained below, I believe that this court should exercise its supervisory authority to direct the circuit court to vacate Edwards's convictions. Thus, I respectfully dissent.

¶ 31    In opposing Edwards's petition, the State argues, in relevant part, that section 11(a) of the Timber Buyers Licensing Act (Act) criminalizes the violation of administrative rules and regulations promulgated under the Act. 225 ILCS 735/11(a) (West 2016). Initially, as the State correctly concedes, it is important to recognize that the information did *not* rely on section 11(a). Putting that fundamental defect aside for the sake of argument, I tend to agree with the State's general proposition that the legislature has criminalized violations of administrative rules under section 11(a) of the Act.

¶ 32    It is undisputed that both counts in the information charging Edwards with a criminal offense relied, in relevant part, on the administrative rule found in section 1535.1(b) of Title 17. 17 Ill. Adm. Code 1535.1(b) (2003). Logically, then, this court's analysis should focus on the administrative rule that the State alleges that Edwards violated. The majority, however, does not even cite, let alone analyze, the language of section 1535.1(b) of Title 17, the administrative rule at the heart of the dispute here. In its entirety, that rule provides:

> "(b) Only persons listed with the Department [of Natural Resources] as authorized buyers may represent the licensee. Authorized buyers shall designate in all contractual arrangements that the licensee is the timber buyer. Failure to comply with this provision shall constitute 'buying timber without a timber buyer's license.' Authorized buyers may only be listed on one license. To be eligible to hold a timber buyer's license, the applicant must be at least 18 years of age." 17 Ill. Adm. Code 1535.1(b) (2003).

For purposes of this case, section 1535.1(b) of Title 17 is a rather simple and straightforward administrative rule. It plainly identifies and defines a single regulatory offense—"buying timber without a timber buyer's license."

¶ 33    Although the State's information cited that rule in charging Edwards, the State did not allege that Edwards committed the actual offense defined by section 1535.1(b) of Title 17. Instead, in what has to be a truly unprecedented maneuver, the State relied on that rule to charge Edwards with a completely different offense. Specifically, the State alleged that Edwards committed two counts of the purported regulatory offense of "unlawfully acting as a timber buying agent for multiple licensed timber buyers."

¶ 34    It is undisputed, however, that section 1535.1(b) of Title 17 does not contain any reference to the offense Edwards was alleged to have committed, let alone identify the elements of that charged offense. Although Edwards was convicted of two counts of what appears to be a completely new regulatory offense, the State has never identified the elements of this supposed regulatory offense despite the circuit court twice allowing the State to amend its information. Likewise, the majority here never identifies the name of the underlying offense that supports Edwards's convictions. Instead, the majority states that Edwards was "charged by information with two violations of the Timber Buyers Licensing Act." *Supra* ¶ 3.

¶ 35    It is not clear from the State's argument in this court how an administrative rule can be used to support a criminal conviction of an alleged regulatory offense that the rule itself never identifies or details. The State has not cited, and my research has not revealed, any legal

authority allowing the State to rely on an administrative regulation that defines one regulatory offense to obtain a criminal conviction for a completely different, and undefined, regulatory offense. But that is exactly what has occurred in this case.

¶ 36    If that glaring deficiency is not sufficiently concerning to the majority, it is also readily apparent from the rule's plain language that the prohibitions of section 1535.1(b) of Title 17 are inapplicable to the conduct that was charged against Edwards in the information. Count I of the information alleged that Edwards "knowingly acted as an authorized agent for multiple licensed timber buyers, being listed as an agent for timber buyer Trent Copelen and acted as agent for timber buyer Jonathan Luckett and represented himself as a timber buyer when attempting to enter into an agreement with Donald Cook." Count II alleged, in relevant part, that Edwards "knowingly acted as an authorized agent for multiple licensed timber buyers, being listed as an agent for timber buyer Trent Copelen and acted as an agent for timber buyer Jonathan Luckett in selling timber to Leroy Yoder of Plainview Pallet, Tom Farris of Farris Forest Products, John Peters of River City Hardwood, Inc., Norman Hochstetler of Oak Ridge Lumber, LLC, and Michael Eichen of Eichen Lumber Company, Inc."

¶ 37    As previously explained, the only administrative rule cited in the State's information that could conceivably apply to the charged conduct is the rule contained in section 1535.1(b) of Title 17. The uncontested record, however, shows that the alleged conduct does not violate any part of that rule's four requirements.

¶ 38    First, an offender could violate the rule by failing to be listed with the Department of Natural Resources as an authorized buyer to represent the timber buyer licensee. 17 Ill. Adm. Code 1535.1(b) (2003). Neither count of the information alleged that Edwards was not listed with the Department of Natural Resources as an authorized buyer. Second, an offender could violate the rule by failing to designate in all contractual arrangements that the licensee is the timber buyer. 17 Ill. Adm. Code 1535.1(b) (2003). Neither count of the information alleged that Edwards violated this provision in any contractual arrangements. Third, the rule could be violated if the offender is "listed" as an authorized buyer on more than one timber buyer's license. 17 Ill. Adm. Code 1535.1(b) (2003). Both counts of the information allege that Edwards was "listed as an agent for timber buyer Trent Copelen," but the charges do not specify any other person for whom Edwards was "listed" as an authorized buyer or agent. In other words, Edwards appears to have complied with this provision. Last, an offender could violate the rule by applying for a timber buyer's license before reaching the age of 18 years. 17 Ill. Adm. Code 1535.1(b) (2003). Neither count of the information alleges that Edwards applied for a timber license when he was a minor.

¶ 39    To summarize, the rule in section 1535.1(b) of Title 17 can potentially be violated in only four ways, but neither charge in the two-count information alleged that Edwards violated any of those four requirements or prohibitions. In other words, it does not even appear from the face of the State's information that Edwards belongs to a category of offender that the administrative rule was intended to govern. Presumably, that is why the State chose to charge Edwards with committing a completely different and undefined regulatory offense than the one actually identified by section 1535.1(b) of Title 17.

¶ 40    I understand my colleagues' reluctance to apply this court's historically narrow jurisprudence on the extraordinary remedy of prohibition relief. Nonetheless, this court need not turn a blind eye to a clear injustice. Nothing is to be gained from expending more judicial

resources on this case by forcing Edwards to relitigate this matter in the lower courts. And, contrary to the State's argument here, this case presents an error much more serious than a simple defect in the charging instrument.

¶ 41    While supervisory orders are generally disfavored outside of our leave-to-appeal docket (*People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 212 (2009)), this court recently reaffirmed in a unanimous decision that our supervisory authority over Illinois's judicial system is "unlimited in extent and hampered by no specific rules" (*Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶ 16). Of course, we exercise our supervisory authority with restraint and "only under exceptional circumstances." *Vasquez Gonzalez*, 2018 IL 123025, ¶ 17.

¶ 42    I believe that this case presents that kind of exceptional circumstance. In what is hopefully an exceedingly rare occurrence, the State in this case has obtained a criminal conviction for a regulatory offense that does not exist based on charged conduct that is not criminalized by the regulation cited in the information. We should not hesitate to exercise our supervisory authority to correct this clear injustice. See *In re Estate of Funk*, 221 Ill. 2d 30, 97-98 (2006) (explaining that this court's supervisory authority "is bounded only by the exigencies which call for its exercise"). If a majority of this court does not believe this case qualifies for prohibition relief, it should, in my opinion, exercise its plenary supervisory authority to enter a supervisory order directing the circuit court to vacate Edwards's criminal convictions. Accordingly, I respectfully dissent.

¶ 43    JUSTICES BURKE and NEVILLE join in this dissent.